82 A.3d 867

AMERICAN BANK HOLDINGS, INC.

v.

Brian KAVANAGH and Jeffrey Weber.

No. 21, Sept. Term, 2013.

Court of Appeals of Maryland.

Dec. 30, 2013.

David S. Panzer (Greenberg, Traurig, LLP, Washington, DC), on brief, for Petitioner.

Martin E. Wolf (Benjamin H. Carney, Richard S. Gordon, Gordon, Gordon & Wolf, Chtd. of Towson, MD, John W. Nowicki, Tyler Nowicki, Law Offices of John W. Nowicki, P.A., Bel Air, MD), on brief, for Respondents.

Argued before BARBERA, C.J., HARRELL, BATTAGLIA, GREENE, ADKINS, McDONALD and WATTS, JJ.

BATTAGLIA, J.

American Bank Holdings, Inc., Petitioner, is engaged in the business of originating, making, and selling residential mortgage loans. Brian Kavanagh and Jeffrey Weber (collectively "Respondents") were employed by American as co-branch managers operating an office located at 9500 Harford Road, Baltimore, as well as originating residential mortgage loans. Respondents executed similar "Co–Branch Manager Employment Agreement[s]" with American, which, in relevant part, provided that American was to establish a "loss reserve"[1] account "funded with funds earned by the Employee." The amount to be deposited into this account was one-tenth of one percent "on all loan transactions"[2], and would "be used by [American] to pay any losses incurred by [American] with respect to the Branch Office" managed by Respondents. The agreements further provided that six months after termination of the agreements, Respondents were to be paid, "as a bonus," twenty-five percent of what remained in the loss reserve and on the one-year anniversary of the termination, fifty-percent of what remained.

Respondents' employment agreements each contained an arbitration clause, which, in relevant part, provided: "Any controversy or claim, other than petitions for equitable relief,

---

1. Loss reserves are funds set aside to offset financial losses or obligations. A bank, for example, may set aside loan loss reserves "representing the amount thought to be adequate to cover estimated losses in the loan portfolio. When a loan is charged off, it is removed from the loan portfolio as an earning asset, and its book value is deducted from the reserve account for loan losses." Barron's Business Guides, Dictionary of Banking Terms 273 (6th ed. 2012).

2. The terms of the employment agreements provided, "[t]he amount required to be deposited into the reserve is 10bps on all loan transactions." The abbreviation "bps" stands for "basis point," which is "one hundredth of one percent (as in the yield of an investment)." Merriam–Webster's Collegiate Dictionary 102 (11th ed. 2003).

arising out of or relating to this Agreement, or breach hereof (including arbitrability of any controversy or claim), shall be settled by arbitration, in Bethesda, Maryland and in accordance with the laws of the State of Maryland. . . ."

Respondents terminated their employment agreements with American, but American allegedly failed to pay Respondents the funds due them from the loss reserve in accordance with the terms of their employment agreements. Respondents filed a "Complaint for Accounting"[3] in the Circuit Court for Baltimore County against American, after allegedly having "made numerous proper requests for statements and supporting documentation for the expenses, losses and/or any other monetary transaction that has contributed to the Loss Reserve Account for the period of [Respondents'] employment", believing that the amount due them was approximately $250,000. Respondents, accordingly, demanded that "American be ordered by a decree of this Court to fully and completely account for all sums due [Respondents] in accordance with each [Respondent's] Co–Branch Manager Agreement, specifically the Loss Reserve Account" and requested such "further relief as this Court finds just and equitable."

American filed an Answer to Respondents' Complaint, generally denying many of Respondents' averments, specifically denying others, and asserting the affirmative defenses of accord and satisfaction and payment, as well as the "Preliminary Defense" that "this Court lacks jurisdiction to hear the case because [Respondents'] claims are subject to mandatory arbitration agreements set forth in the . . . Employment Agreements." The circuit court set deadlines that included one in which to file motions to dismiss within two weeks; it was within that deadline that American filed a "Petition to Compel Arbitration and Stay All Proceedings and Request for Hearing," asserting that, because Respondents' claims arose out of their employment agreements, the court was required

---

**3.** An "accounting" is a "legal action to compel a defendant to account for and pay over money owed to the plaintiff but held by the defendant (often the plaintiff's agent)." Black's Law Dictionary 22 (9th ed. 2009).

to compel arbitration.[4] Respondents, in response, filed an Answer to American's "Petition to Compel Arbitration and Stay All Proceedings and Request for Hearing," arguing that their request for accounting was "a matter reserved for equity jurisdiction" and, therefore, their claim was not subject to arbitration under the terms of the arbitration clause.

Judge John Turnbull, II denied American's "Petition to Compel Arbitration and Stay All Proceedings and Request for Hearing," without a hearing, by Order that, in its entirety, provided:

> Upon consideration of Plaintiff's Answer to Defendant's Petition to Compel Arbitration and Stay All Proceedings and Request for Hearing in the above referenced matter, it is on this 27th day of May, 2011, hereby:

> ORDERED that Defendant's Petition to Compel Arbitration and Stay All Proceedings and Request for Hearing is hereby DENIED.

American, then, filed a Notice of Appeal, which stated that "American Bank Holdings, Inc. hereby notes an appeal . . . to the Court of Special Appeals including but not limited to an appeal of the Court's May 27,2011 Order denying Defendant's Petition to Compel Arbitration and Stay All Proceedings . . . in the action." [5]

■ The intermediate appellate court dismissed American's appeal, in an unreported opinion, concluding, *inter alia*, "[t]he denial of appellant's motion to compel arbitration is not final for the purposes of § 12–301[6] [of the Courts and Judicial

---

**4.** American filed their Answer to Respondents' "Complaint for Accounting" on April 21, 2011. A scheduling order was issued on April 26, 2011, which required that motions to dismiss be filed by May 11, 2011. American filed its "Petition to Compel Arbitration and Stay All Proceedings and Request for Hearing" on May 3, 2011.

**5.** American also filed what it styled as a "Notice", which "notes for the record that it did not receive a copy of Plaintiff's [sic] Answer to Defendant's Petition to Compel Arbitration and Stay All Proceedings and Request for Hearing" before entry of the court's order denying that petition.

**6.** Section 12–301 of the Courts and Judicial Proceedings Article, Maryland Code (1974, 2006 Repl. Vol.) provides:

Proceedings Article, Maryland Code (1974, 2006 Repl. Vol.) ]. . . . In fact, the order was meant to keep the parties *in* court, not put them out of court." (emphasis in original). We granted American's Petition for Certiorari, *American Bank Holdings v. Kavanagh*, 430 Md. 644, 62 A.3d 730 (2013), to consider whether, "the denial of a motion to compel arbitration constitutes a final judgment under § 12–301 if a substantively equivalent petition could have been filed as a separate and independent action under § 3–207[ [7]] [of the Courts and Judicial Proceedings Article, Maryland Code (1974, 2006 Repl. Vol.) ]?" To explore this question we turn to the principles of appellate jurisdiction.

█ Under Section 12–301 of the Courts and Judicial Proceedings Article, Maryland Code (1974, 2006 Repl. Vol.),[8] a party may appeal from a final judgment entered in a civil case by a circuit court:

> Except as provided in § 12–302 of this subtitle, a party may appeal from a final judgment entered in a civil or criminal case by a circuit court. The right of appeal exists from a final judgment entered by a court in the exercise of original, special, limited, statutory jurisdiction, unless in a particular case the right of appeal is expressly denied by law. In a criminal case, the defendant may appeal even though imposition or execution of sentence has been suspended. In a civil case, a plaintiff who has accepted a remittitur may cross-appeal from the final judgment.

7. Section 3–207 of the Courts and Judicial Proceedings Article, Maryland Code (1974, 2006 Repl. Vol.) provides:
 (a) *Refusal to arbitrate.*—If a party to an arbitration agreement described in § 3–202 of this subtitle refuses to arbitrate, the other party may file a petition with a court to order arbitration.
 (b) *Denial of existence of arbitration agreement.*—If the opposing party denies existence of an arbitration agreement, the court shall proceed expeditiously to determine if the agreement exists.
 (c) *Determination by court.*—If the court determines that the agreement exists, it shall order arbitration. Otherwise it shall deny the petition.

8. Unless otherwise noted, all statutory references to the Courts and Judicial Proceedings Article are to the Maryland Code (1974, 2006 Repl. Vol.), the version in effect at the time of the proceedings before the circuit court, although the provisions remain substantially the same in the 2013 Replacement Volume.

Except as provided in § 12–302[⁹] of this subtitle, a party may appeal from a final judgment entered in a civil or criminal case by a circuit court. The right of appeal exists from a final judgment entered by a court in the exercise of original, special, limited, statutory jurisdiction, unless in a particular case the right of appeal is expressly denied by law. In a criminal case, the defendant may appeal even though imposition or execution of sentence has been suspended. In a civil case, a plaintiff who has accepted a remittitur may cross-appeal from the final judgment.

A "final judgment" is defined as "a judgment, decree, sentence, order, determination, decision, or other action by a court ... from which an appeal, application for leave to appeal, or petition for certiorari may be taken." Section 12–101(f) of the Courts and Judicial Proceedings Article. We have taken on the task to further refine just what constitutes a "final judgment." *See Brewster v. Woodhaven Bldg. & Dev., Inc.*, 360 Md. 602, 609–10 n. 1, 759 A.2d 738, 742 n. 1 (2000); *Peat, Marwick, Mitchell & Co. v. Los Angeles Rams Football Co.*, 284 Md. 86, 91, 394 A.2d 801, 804 (1978). In so doing, we have determined that a ruling of the circuit court, to constitute a final judgment, must be an "unqualified, final disposition of the matter in controversy," *Gruber v. Gruber*, 369 Md. 540, 546, 801 A.2d 1013, 1016 (2002) (quotation omitted), which decides and concludes the rights of the parties involved or denies a party the means of further prosecuting or defending rights and interests in the subject matter of the proceeding. *Nnoli v. Nnoli*, 389 Md. 315, 324, 884 A.2d 1215, 1219–20 (2005). An order that has the effect of putting a party out of court is a final judgment, while an order that does not prevent a party from further prosecuting or defending rights is not a final judgment. *Brewster*, 360 Md. at 611–13, 759 A.2d at 742–43; *Town of Chesapeake Beach v. Pessoa Constr. Co., Inc.*, 330

---

**9.** Section 12–302 of the Courts and Judicial Proceedings Article, not relevant here, deals with the right to appeal from final judgments in district court, administrative agencies, contempt proceedings, criminal cases, and local legislative bodies.

Md. 744, 750–51, 625 A.2d 1014, 1017 (1993); *Horsey v. Horsey*, 329 Md. 392, 401–02, 620 A.2d 305, 310 (1993).

The requirement that an order, to be a final judgment, must put a party out of court or otherwise terminate the proceedings has deep historical roots in Maryland, as Judge Irma Raker explained in *Brewster*:

Our cases pertaining to this question show that an order is final if it terminates the litigation in a particular court. The cases stating the general rule that a judgment terminating litigation is a final judgment date from an early period. As early as 1835, we were already referring to the "well established rule" that

no appeal can be prosecuted in this Court, until a decision has been had in the Court below, which is so far final, as to settle, and conclude the rights of the party involved in the action, or denying to the party the means of further prosecuting or defending the suit.

*Boteler & Belt v. State ex rel. Chew & Co.*, 7 G. & J. 109, 112–13 (Md.1835). Thus, it is well settled that an order denying a party the ability to pursue claims anywhere is an immediately appealable final order. We have often reiterated this point, applying it over an extraordinarily long historical period and an impressively wide range of subject matter.... *Peat & Co. v. Los Angeles Rams*, 284 Md. 86, 91, 394 A.2d 801, 804 (1978) (a trial court's order denying a party's motion to disqualify opposing counsel was not an immediately appealable final judgment because it did not "determine and conclude the rights involved" or "deny the appellant ... means of further prosecuting or defending his rights in the subject matter of the proceeding"); *McCormick v. St. Francis de Sales Church*, 219 Md. 422, 426–27, 149 A.2d 768, 771 (1959) (a trial court's order granting defendant's motion to strike plaintiff's initial pleading is an immediately appealable final judgment because "[t]he effect of the court's ruling was to put the plaintiff out of court and deny her the means of further prosecuting her case against the moving parties"); *Jeffers v. State*, 203 Md. 227, 229, 100 A.2d 10, 11 (1953) (a trial court's order dismissing father's

petition to dismiss mother's petition charging him with a child support obligation was not an immediately appealable final judgment, because "an order of the Circuit Court which does not settle and conclude the rights of the parties, and does not deny to the parties the means of further prosecuting or defending the action, is not a final judgment"); ... *Bragunier v. Penn*, 79 Md. 244, 245–46, 29 A. 12, 12 (1894) (a trial court's order dismissing plaintiff's petition was an immediately appealable final judgment "inasmuch as it denied the petitioner the means of further prosecuting his suit"); *Gittings v. State*, 33 Md. 458, 461, 462–63 (1871) (a trial court's order to submit to the jury the question of a defendant's residence for purposes of determining whether the court had personal jurisdiction was not immediately appealable because it was not "so far final as to settle and conclude the rights of the party involved in the action, or to deny to him the means of further prosecuting or defending the suit").....

*Brewster*, 360 Md. at 611–12, 759 A.2d at 742–43 (alterations in original).

There are, however, interlocutory orders,[10] that do not fit within the traditional definition of a final judgment that have, by legislative fiat, under Section 12–303 of the Courts and Judicial Proceedings Article,[11] been deemed immediately ap-

---

**10.** An interlocutory order is "[a]n order that relates to some intermediate matter in the case; any order other than a final order." Black's Law Dictionary 1207 (9th ed. 2009).

**11.** Section 12–303 of the Courts and Judicial Proceedings Article provides:

A party may appeal from any of the following interlocutory orders entered by a circuit court in a civil case:

(1) An order entered with regard to the possession of property with which the action is concerned or with reference to the receipt or charging of the income, interest, or dividends therefrom, or the refusal to modify, dissolve, or discharge such an order;

(2) An order granting or denying a motion to quash a writ of attachment; and

(3) An order:

pealable. *See Nnoli*, 389 Md. at 324, 884 A.2d at 1220. In addition, at common law, an order could be appealed as a collateral order under the "collateral order doctrine," which permits immediate appeals from orders that: "conclusively determine the disputed question"; "resolve an important issue"; are "completely separate from the merits of the action"; and are "effectively unreviewable on appeal from a final judgment." *Dawkins v. Balt. City Police Dep't*, 376 Md. 53, 58, 827 A.2d 115, 118 (2003) (citations and quotations omitted); *Town of Chesapeake Beach*, 330 Md. at 755, 625 A.2d at 1019. An immediate appeal, under certain circumstances, also is permitted from an order certified by the trial court as final

(i) Granting or dissolving an injunction, but if the appeal is from an order granting an injunction, only if the appellant has first filed his answer in the cause;

(ii) Refusing to dissolve an injunction, but only if the appellant has first filed his answer in the cause;

(iii) Refusing to grant an injunction; and the right of appeal is not prejudiced by the filing of an answer to the bill of complaint or petition for an injunction on behalf of any opposing party, nor by the taking of depositions in reference to the allegations of the bill of complaint to be read on the hearing of the application for an injunction;

(iv) Appointing a receiver but only if the appellant has first filed his answer in the cause;

(v) For the sale, conveyance, or delivery of real or personal property or the payment of money, or the refusal to rescind or discharge such an order, unless the delivery or payment is directed to be made to a receiver appointed by the court;

(vi) Determining a question of right between the parties and directing an account to be stated on the principle of such determination;

(vii) Requiring bond from a person to whom the distribution or delivery of property is directed, or withholding distribution or delivery and ordering the retention or accumulation of property by the fiduciary or its transfer to a trustee or receiver, or deferring the passage of the court's decree in an action under Title 10, Chapter 600 of the Maryland Rules;

(viii) Deciding any question in an insolvency proceeding brought under Title 15, Subtitle 1 of the Commercial Law Article;

(ix) Granting a petition to stay arbitration pursuant to § 3–208 of this article;

(x) Depriving a parent, grandparent, or natural guardian of the care and custody of his child, or changing the terms of such an order; and

(xi) Denying immunity asserted under § 5–525 or § 5–526 of this article.

under Rule 2–602,[12] or a final judgment may be entered by an appellate court under Rule 8–602(e).[13] *See Miller Metal Fabrication, Inc. v. Wall,* 415 Md. 210, 221–22, 999 A.2d 1006, 1013–14 (2010); *Silbersack v. ACandS, Inc.,* 402 Md. 673, 681, 938 A.2d 855, 859 (2008).

---

12. Rule 2–602 provides:

(a) **Generally.** Except as provided in section (b) of this Rule, an order or other form of decision, however designated, that adjudicates fewer than all of the claims in an action (whether raised by original claim, counterclaim, cross-claim, or third-party claim), or that adjudicates less than an entire claim, or that adjudicates the rights and liabilities of fewer than all the parties to the action:
(1) is not a final judgment;
(2) does not terminate the action as to any of the claims or any of the parties; and
(3) is subject to revision at any time before the entry of a judgment that adjudicates all of the claims by and against all of the parties.
(b) **When allowed.** If the court expressly determines in a written order that there is no just reason for delay, it may direct in the order the entry of a final judgment:
(1) as to one or more but fewer than all of the claims or parties; or
(2) pursuant to Rule 2–501(f)(3), for some but less than all of the amount requested in a claim seeking money relief only.

13. Rule 8–602(e) provides:

(e) **Entry of judgment not directed under Rule 2–602.** (1) If the appellate court determines that the order from which the appeal is taken was not a final judgment when the notice of appeal was filed but that the lower court had discretion to direct the entry of a final judgment pursuant to Rule 2–602(b), the appellate court may, as it finds appropriate, (A) dismiss the appeal, (B) remand the case for the lower court to decide whether to direct the entry of a final judgment, (C) enter a final judgment on its own initiative or (D) if a final judgment was entered by the lower court after the notice of appeal was filed, treat the notice of appeal as if filed on the same day as, but after, the entry of the judgment.
(2) If, upon remand, the lower court decides not to direct entry of a final judgment pursuant to Rule 2–602(b), the lower court shall promptly notify the appellate court of its decision and the appellate court shall dismiss the appeal. If, upon remand, the lower court determines that there is no just reason for delay and directs the entry of a final judgment pursuant to Rule 2–602(b), the case shall be returned to the appellate court after entry of the judgment. The appellate court shall treat the notice of appeal as if filed on the date of entry of the judgment.
(3) If the appellate court enters a final judgment on its own initiative, it shall treat the notice of appeal as if filed on the date of the entry of the judgment and proceed with the appeal.

With respect to an order denying a petition to compel arbitration filed as an independent action, we have stated, in *dicta*, that such an order is appealable. *Hartford Accident & Indem. Co. v. Scarlett Harbor Assocs. Ltd. P'shp*, 346 Md. 122, 126 n. 5, 695 A.2d 153, 155 n. 5 (1997), citing *Litton Bionetics, Inc. v. Glen Constr. Co.*, 292 Md. 34, 437 A.2d 208 (1981). In the present case, however, the appealability of an order denying a petition to compel arbitration filed in a case that is extant is at issue.

The denial of petitions to compel arbitration filed in existing actions has been the subject of two of our recent opinions, *Addison v. Lochearn Nursing Home, LLC*, 411 Md. 251, 983 A.2d 138 (2009) and *Schuele v. Case Handyman & Remodeling Services, LLC*, 412 Md. 555, 989 A.2d 210 (2010), which Respondents argue are dispositive of the instant action. We disagree.

In *Addison*, FutureCare–Lochearn, Inc., a nursing home, sued Beulah Addison for breach of contract, alleging that she was delinquent in paying for nursing home care and services. Ms. Addison counterclaimed, alleging she was unable to pay because a FutureCare employee embroiled her in a real estate scam, depriving her of equity in her former home and, thus, prevented her from paying the bill. FutureCare responded by filing an Answer generally denying liability, as well as a "Motion to Compel Arbitration of Counterclaims, Motion to Stay, and Request for Attorney's Fees," asserting that Ms. Addison had signed a "Resident and Facility Arbitration Agreement," requiring the submission of her counterclaims to arbitration. *Addison*, 411 Md. at 258, 983 A.2d at 142. FutureCare's motion was denied after a hearing and the circuit court refused to certify the order denying FutureCare's motion as final under Rule 2–602(b); FutureCare appealed, nevertheless.

Ms. Addison, in response, filed a "Motion to Dismiss the Interlocutory Appeal." *Id.* at 259, 983 A.2d at 143. The Chief Judge of the intermediate appellate court denied Ms. Addison's motion to dismiss and after oral argument a panel of the

intermediate appellate court, upon FutureCare's request, certified the denial of the motion to compel arbitration as a final judgment under Rule 8–602(e) and reversed the decision of the circuit court denying that motion. Ms. Addison petitioned for certiorari and initially presented the question of whether the Court of Special Appeals erred in compelling arbitration of her counterclaims [14]; after oral argument, "we requested the parties to submit supplemental briefs and to argue an additional issue," which was:

**Assuming that the denial of the motion to compel arbitration and to stay the judicial proceedings in the present case is not appealable as a final judgment,** does Section 12–303(3)(ix) of the Courts and Judicial Proceedings Article permit an appeal as an appealable interlocutory order?

*Id.* at 261, 983 A.2d at 144 (emphasis added).

We initially determined that the Court of Special Appeals erred in certifying the circuit court's decision as a final judgment under Rule 8–602, when the trial court was asked to certify that same order as final pursuant to Rule 2–602, but declined to do so. We turned, then, to whether the order denying FutureCare's motion to compel arbitration filed in an existing action was appealable under Section 12–303 of the Courts and Judicial Proceedings Article or under the collateral order doctrine, answering both questions in the negative. *Addison,* however, is not dispositive of the issue presented in the instant case because we operated under the assumption that the order denying FutureCare's motion to compel arbitration was not a final judgment under Section 12–301 of the Courts and Judicial Proceedings Article, which now is directly presented in the present case.

---

**14.** Ms. Addison filed a petition for a writ of certiorari presenting the following question:

Did the Court of Special Appeals err in compelling arbitration of claims arising from a predatory real estate scam and sabotaged Medicaid application?

*Addison v. Lochearn Nursing Home, LLC,* 411 Md. 251, 261, 983 A.2d 138, 144 (2009).

Shortly after deciding *Addison*, in *Case Handyman*,[15] we addressed the question of whether an appellate court could certify as a final judgment, pursuant to Rule 8–602, an order denying a motion to compel arbitration filed in an existing action when the trial court was not petitioned to certify that order as final under Rule 2–602. In the case, the Schueles entered into a home improvement contract with a franchisee of Case Handyman and, after months passed without work commencing, eventually filed a class action suit against Case Handyman alleging, *inter alia*, breach of contract and fraud. Case Handyman, in response, filed a "Motion to Dismiss, or in the Alternative, to Compel Arbitration and Stay Proceedings," which was initially granted, but the order granting the motion was later stricken. *Case Handyman*, 412 Md. at 562, 989 A.2d at 214. Case Handyman noted an immediate appeal to the Court of Special Appeals, which reversed the circuit court's denial of Case Handyman's motion to compel arbitration. The Schueles petitioned for a writ of certiorari presenting three questions relating to the merits of the case,[16] but because we had issued our decision in *Addison*, after oral

---

**15.** We heard oral argument in *Schuele v. Case Handyman & Remodeling Services, LLC*, 412 Md. 555, 989 A.2d 210 (2010) on September 9, 2009. On November 10, 2009, we issued our decision in *Addison*.

**16.** The Schueles filed a petition for writ of certiorari presenting the following three questions:

I. Did the Court of Special Appeals err in adopting federal law as controlling on the issue of whether equitable estoppel could be invoked by a non-party to a contract in order to enforce an arbitration provision, rather than applying state law to determine the provision's enforceability?

II. Did the Court of Special Appeals err in holding that Petitioners were equitably estopped from avoiding contractual arbitration with a non-party, where the non-party disavows any cognizable connection to the contract at issue, and where the agreement does not manifest any intent or agreement to arbitrate the legal or factual issues related to Respondents' own wrongdoing?

III. Did the Court of Special Appeals err in holding that a home improvement contract's arbitration provision may be judicially enforced even though the provision does not comply with the notice requirements imposed on such provisions under COMAR?

*Case Handyman*, 412 Md. at 564, 989 A.2d at 215.

argument in the case, "[w]e requested the parties to submit supplemental briefs to the Court to address whether *Addison* was dispositive of the jurisdictional issue. . . ." *Id.* at 564 n. 5, 989 A.2d at 215 n. 5.

We concluded, after supplemental briefing, that although Case Handyman had not requested that the circuit court certify its order denying its motion to compel arbitration filed in an existing action as final under Rule 2–602, as had the moving party in *Addison,* we could not so certify that order as final, under Rule 8–602, because, in order to do so, the order must be "final in the traditional sense," which we opined is not the case with an order denying a motion to compel arbitration filed in an existing action, because the case remained in court as a result. *Id.* at 570–72, 989 A.2d at 215–16. Although the *Case Handyman* analysis is suggestive of the result in the present case, it is not dispositive, because the certification issue was evocative of the holding.

In the present case we are squarely presented with whether a circuit court's denial of a motion or petition to compel arbitration filed in an existing action is a final judgment and, therefore, immediately appealable, without regard to certification by a trial or appellate court. American argues that an order denying its petition to compel arbitration is an appealable final judgment regardless of whether it was filed as an independent action or filed in an existing action.

In order to address this issue, we turn to the provisions of the Maryland Uniform Arbitration Act ("MUAA"), enacted in 1965. Enactment of MUAA was intended to eviscerate the "well-established" common law rule that "unless an agreement to arbitrate has been consummated by an award, it will not bar a suit at law or in equity with respect to the question agreed to be arbitrated." *Tomlinson v. Dille,* 147 Md. 161, 167, 127 A. 746, 748 (1925) (citation omitted). MUAA's purpose was "to provide for enforcement of written agreements to submit existing and future controversies to arbitration, to provide for court proceedings to compel or stay arbitration pursuant to written agreements," and "to provide procedures

by which arbitration may be had" in Maryland. 1965 Maryland Laws, Chapter 231. MUAA was codified as Sections 1 through 23 of Article 7, Maryland Code (1957, 1968 Repl. Vol.). The only provisions with which we are concerned in Section 18 are (a)(1) and (b), which permitted an appeal to be taken from an order denying an application to compel arbitration only "in the manner and to the same extent" as other final judgments in civil actions. Section 18 provided:

(a) An appeal may be taken from:

(1) **An order denying an application to compel arbitration made under § 2[** [17]**];**

---

**17.** Section 2 of Article 7, Maryland Code (1957, 1968 Repl. Vol.) provided:

(a) *When court to order arbitration; expeditious hearing to determine issue; ordering arbitration or denial of application.*—On application of a party showing an agreement described in § 1, and the opposing party's refusal to arbitrate, the court shall order the parties to proceed with arbitration, but if the opposing party denies the existence of the agreement to arbitrate, the court shall proceed expeditiously to the determination of the issues so raised and shall order arbitration if found for the moving party, otherwise, the application shall be denied.

(b) *Staying arbitration.*—On application, the court may stay an arbitration proceeding commenced or threatened on a showing that there is no agreement to arbitrate as described in § 1. Such an issue, when in substantial and bona fide dispute, shall be forthwith tried and the stay ordered if found for the moving party. If found for the opposing party, the court shall order the parties to proceed to arbitration.

(c) *Courts in which application may be made.*—If an issue referable to arbitration under the alleged agreement is involved in an action or proceeding pending in a court having jurisdiction to hear applications under subsection (a) of this section, the application shall be made therein. Otherwise and subject to § 17, the application may be made in any court of competent jurisdiction.

(d) *Stay of proceedings when order of arbitration or application therefor made; when order to include stay.*—Any action or proceeding involving an issue subject to arbitration shall be stayed if an order for arbitration or an application therefor has been made under this section or, if the issue is severable, the stay may be with respect thereto only. When the application is made in such action or proceeding, the order for arbitration shall include such stay.

(e) *When order not to be refused.*—An order for arbitration shall not be refused or an arbitration proceeding stayed on the ground that the claim in issue lacks merit or bona fides or because a valid basis for the claim sought to be arbitrated has not been shown.

(2) An order granting an application to stay arbitration made under § 2(b);

(3) An order confirming or denying confirmation of an award;

(4) An order modifying or correcting an award;

(5) An order vacating an award without directing a rehearing; or

(6) A judgment or decree entered pursuant to the provisions of this article.

**(b) The appeal shall be taken in the manner and to the same extent as from orders or judgments in a civil action.**

Maryland Code (1957, 1968 Repl. Vol.), Article 7, Section 18 (emphasis added).

Section 18, however, was repealed in 1973 as part of the Code revision process,[18] and its provisions were eliminated from the Annotated Code, because "[m]ost of its language deals with appeals from final judgments and is thus covered

---

18. The Governor's Commission to Revise the Annotated Code of Maryland, responsible for revising the Code, was established with the "essential purpose" of simplifying and organizing the Code by placing "logically-related statutes in close proximity, instead of scattering them throughout the Code, as is the case under the present alphabetical organization of articles." Governor's Commission to Revise the Annotated Code of Maryland, Commission Report No. 3 to the Legislative Council of Maryland, 2 (August 14, 1972). The Commission was "charged with the responsibility of undertaking a formal revision of the public general laws of Maryland while making recommendations concerning appropriate systems of collecting and publishing the public local laws, executive orders, and agency regulations." Governor's Commission to Revise the Annotated Code of Maryland, Revisor's Manual, 1–2 (1971). The Commission could "take no action resulting in an actual change in statutory language without the approval of the General Assembly." Id. at 2. The revision, rather, was "to be a formal and not substantive revision, which ... means that the effect of the law on any particular subject is not to be altered by the commission." Id. at 6. In some instances, however, the Commission did propose substantive changes to statutes, but "[w]henever this has been done, the Revisor's Note appended to the section explains the proposed change and the reason for it." Governor's Commission to Revise the Annotated Code of Maryland, Commission Report No. 3 to the Legislative Council of Maryland, 2–3 (August 14, 1972).

by § 12–301." 1973 Maryland Laws, Chapter 2, Revisor's Note to Section 12–303. No substantive changes were intended during the recodification process, with respect to MUAA, as was elucidated in one of the reports issued by the Governor's Commission to Revise the Annotated Code of Maryland analyzing the recodification of the Courts and Judicial Proceedings Article:

[S]ubtitle [2 of Title 3 of the Courts and Judicial Proceedings Article] contains provisions of the Uniform Arbitration Act which was approved by the National Conference of Commissioners on Uniform State Laws, and the American Bar Association in 1955. It presently appears as Art. 7 of the Code. The Act covers voluntary written agreements to arbitrate. Its purpose is to validate arbitration agreements, make the arbitration process effective, provide necessary safeguards, and provide an efficient procedure when judicial assistance is necessary. . . .

The provisions of Art. 7, § 18 dealing with appeals are proposed for repeal because they are covered by Title 12 of the Courts Article. **This subtitle contains no substantive changes.** All provisions are reorganized to conform to the style of the Courts and other correlating articles.

Governor's Commission to Revise the Annotated Code of Maryland, Commission Report No. 3F to the General Assembly, 27 (July 16, 1973) (emphasis added).

■ Seizing on the fact that no substantive changes were intended to MUAA during the revision process, American argues that the order denying its petition to compel arbitration filed in an existing action is immediately appealable, because former Section 18 permitted an appeal from an order denying an application to compel arbitration. American's argument misses the mark, however, because under former Section 18(b) of Article 7, Maryland Code (1957, 1968 Repl. Vol.), an appeal from an order denying an application to compel arbitration could be taken only "in the manner and to the same extent as from orders or judgments in a civil action", which anticipated, then, only final judgments, i.e., those that

terminated judicial proceedings. *See generally Brewster,* 360 Md. at 611, 759 A.2d at 742 (explaining that the final judgment rule was "well established" as early as 1835). The denial of American's petition to compel arbitration filed in an existing action, thus, is not immediately appealable as a final judgment, because that denial did not put the parties out of court by terminating the proceedings. The parties, here, remained in court.[19]

---

**19.** Although the dissent argues that the Legislature intended from the get-go to render the denial of a motion to compel arbitration immediately appealable, the Legislature has not abrogated any of our holdings or addressed the *dictum* in *Addison,* 411 Md. at 273, 983 A.2d at 151, or *Case Handyman,* 412 Md. at 566, 989 A.2d at 216, which held in 2009 and 2010, respectively, that an order denying a motion to compel arbitration filed in an existing action was not immediately appealable as an interlocutory order or under the collateral order doctrine. Both cases' *dictum* also strongly foreshadowed the result in the instant case, so much so that the Court of Special Appeals noted that, "[i]n light of the Court of Appeals' . . . decision in *Addison v. Lochearn Nursing Home, LLC,* 411 Md. 251, 983 A.2d 138 (2009), the denial of a motion to compel arbitration is not a final judgment. . . ." *Freedman v. Comcast Corp.,* 190 Md.App. 179, 190 n. 5, 988 A.2d 68, 74 n. 5 (2010).

We have oft-noted that "[t]he General Assembly is presumed to be aware of this Court's interpretation of its enactments and, if such interpretation is not legislatively overturned, to have acquiesced in that interpretation." *Jones v. State,* 362 Md. 331, 337–38, 765 A.2d 127, 131 (2001), quoting *Williams v. State,* 292 Md. 201, 210, 438 A.2d 1301, 1305 (1981); *see also Montgomery Cnty. v. Robinson,* 435 Md. 62, 78, 76 A.3d 1159, 1168 (2013); *Hoile v. State,* 404 Md. 591, 628, 948 A.2d 30, 52 (2008). Under our jurisprudence, legislative inaction can be equated to acquiescence. *In re Wallace W.,* 333 Md. 186, 197, 634 A.2d 53, 59 (1993).

Further, if the dissent is correct, any order that would adversely impact on arbitrability would run contrary to the legislative purpose of the Maryland Uniform Arbitration Act and would be immediately appealable, pursuant to the 1965 Maryland Uniform Arbitration Act. Why, then, in 1973 did the Legislature carve out as an interlocutory appealable order the grant of a motion to stay arbitration, pursuant to what is now Section 12–303(3)(ix) of the Courts and Judicial Proceedings Article? The grant of a motion to stay was appealable previously as a final judgment in the Uniform Act, as it was in Section 18 of Article 7, Maryland Code (1957, 1968 Repl. Vol.); in the comprehensive overhaul it was reenacted as an interlocutory order from which an appeal could lie, which would not have been necessary had all adverse actions relating to arbitration been deemed final judgments. Therefore, the major premise of the dissent that the Legislature did not deviate from the Uniform Act, also is erroneous.

Our analysis is in accord with the holding of the Court of Special Appeals in *Joseph F. Trionfo & Sons, Inc. v. Ernest B. LaRosa & Sons, Inc.*, 38 Md.App. 598, 381 A.2d 727 (1978). In that case, decided before the merger of courts of law and equity, Trionfo & Sons, a general contractor, and LaRosa & Sons, a subcontractor, entered into a contract which, allegedly, contained a provision requiring the arbitration of any dispute between the parties by an architect. *Trionfo & Sons, Inc.*, 38 Md.App. at 600–02, 601 n. 2, 381 A.2d at 729–30, 729 n. 2. LaRosa & Sons, after a dispute arose regarding payment under the terms of the contract, filed an action at law in the circuit court alleging breach of contract. *Id.* at 602–03, 381 A.2d at 730. Trionfo & Sons responded by filing a "Motion Raising Preliminary Objection or in the Alternative to Order Arbitration and Stay These Proceedings." *Id.* at 603, 381 A.2d at 730. The circuit court denied Trionfo & Sons's motion concluding "essentially that": "the main contract provision in question was not an arbitration clause"; "[a]n architect was not a private, impartial third-party, and could not properly be designated an arbitrator"; and "[t]he decision of the architect was not deemed to be 'final,' and could not be considered a binding arbitration award." *Id.* at 603, 381 A.2d at 730–31.

The case proceeded to trial, with "no further steps being taken" by Trionfo & Sons "to compel arbitration of the dispute," and a verdict was returned in favor of LaRosa & Sons. *Id.* at 604, 381 A.2d at 731. Trionfo & Sons appealed, presenting the question of whether the circuit court erred "in failing to grant [Appellant's] Motion Raising Preliminary Objection, and order arbitration in these proceedings?" *Id.* at 604, 381 A.2d at 731 (alteration in original).

After disposing of Trionfo & Sons's argument on the merits, the Court of Special Appeals turned to the issue of whether Trionfo & Sons "waived, or should be estopped from asserting, a right to arbitration, because its motion raising a preliminary objection did not comport with the prescribed statutory procedure." *Id.* at 608, 381 A.2d at 733. The Court of Special Appeals explained that "[t]he proper procedure would have been to file a petition on the equity side of the court to require

arbitration" in a separate and independent proceeding, *see id.* at 604 n. 6, 381 A.2d at 731 n. 6, citing Section 3–207 of the Courts and Judicial Proceedings Article, Maryland Code (1974), and had Trionfo & Sons followed the proper procedure, the order denying its petition would have been appealable as a final judgment under Section 12–301 of the Courts and Judicial Proceedings Article, Maryland Code (1974). *See id.* at 609, 609 n. 9, 381 A.2d at 733–34, 734 n. 9. The failure to file its request to compel arbitration in a separate and independent proceeding, however, precluded Trionfo & Sons from immediately appealing the denial of its request to compel arbitration: "In resorting to a motion raising preliminary objection, appellant precluded itself from obtaining a pretrial appellate determination as to the existence of the arbitration agreement, since the court's denial of the motion was interlocutory in nature, and not a final order under Md. Cts. & Jud. Proc.Code Ann. § 12–301 (1974)." *Id.* at 609–10, 381 A.2d at 734.

*Trionfo* is distinguished by American as unreliable, because the case was decided before the merger of actions in law and equity in 1984. In so doing, American fails to cite another of the Court of Special Appeals's opinions, that of *Regina Construction Corp. v. Envirmech Contracting Corp.*, 80 Md.App. 662, 565 A.2d 693 (1989), which has not been cited in any forum for the proposition that an order denying a petition to compel arbitration filed in an existing action is immediately appealable as a final judgment. In *Regina*, Envirmech sued Regina Construction and Regina moved to dismiss, because Envirmech had " 'failed to take any step to resolve this case by Arbitration, as provided in the contract between the parties' and that the court therefore 'does not have any jurisdiction over this case....' " *Id.* at 663–64, 565 A.2d at 694. Envirmech, however, argued, "that a motion to dismiss was not the appropriate vehicle to raise that defense—that if Regina desired to invoke the arbitration clause, it should have filed a petition to compel arbitration." *Id.* at 664, 565 A.2d at 694. The circuit court ruled in favor in Envirmech, "that the dispute was not covered by the arbitration clause" and Regina

Construction immediately appealed. *Id.* at 665, 565 A.2d at 695.

The Court of Special Appeals prefaced its analysis of the appealability of the denial of Regina Construction's motion by explaining that a motion to dismiss is not "the proper way in which to invoke an arbitration agreement", and "had the court denied the motion solely on that ground with leave to file a proper motion to compel arbitration, we would have regarded the order as interlocutory and non-appealable." *Id.* at 671, 565 A.2d at 698. The *Regina* court, however, concluded that the order denying Regina's motion to dismiss was immediately appealable as a denial of a motion to compel arbitration, because "the sole basis of the denial of the motion was the court's conclusion that the dispute was not arbitrable." *Id.* In so doing, the court determined *Trionfo* was not dispositive, concluding, without analysis, that, "[w]ith the adoption of the revised Maryland Rules in 1984, the distinctions between law and equity procedure were abolished. There is now but one form of action in the circuit courts. The distinction found important in *Trionfo*, therefore, no longer exists." *Id.* at 671, 565 A.2d at 698 (citation omitted). The distinction drawn in *Regina*, however, does not square with *Trionfo's* reliance on final judgment jurisprudence and has not curried favor in this Court. The merger of law and equity was merely contextual of the central premise of *Trionfo*, which recognized that an order denying a motion to dismiss and compel arbitration filed in an existing action is not an appealable final judgment.

 As we have reiterated, an appealable "final judgment" under Section 12–301 of the Courts and Judicial Proceedings Article decides and concludes the rights of the parties involved or denies a party the means of further prosecuting or defending rights in the subject matter of the proceeding. *Nnoli,* 389 Md. at 323–24, 884 A.2d at 1219–20; *Brewster,* 360 Md. at 611, 759 A.2d at 742; *Peat, Marwick, Mitchell, & Co.,* 284 Md. at 91, 394 A.2d at 804. An order denying a request to compel arbitration, styled as a motion or petition, filed in an existing action does neither and cannot be viewed as a final judgment,

unlike that situation when a Petition to Compel Arbitration filed on its own is denied, which terminates the action.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS IN THIS COURT AND THE COURT OF SPECIAL APPEALS TO BE PAID BY PETITIONER.**

McDONALD, J., dissents.

McDONALD, J., dissenting.

We granted a writ of certiorari in this case to decide whether a party to a contract that provides for arbitration may pursue an immediate appeal when a circuit court denies its motion to compel arbitration.

The Respondents argue that the answer is "no." In their brief and at oral argument before this Court, that answer rested in large part on two propositions: (1) that a code revision bill covertly effected a substantive change in a key legislative policy underlying the Maryland Uniform Arbitration Act; and (2) that, in any event, this Court has already decided the question in their favor in two recent cases— *Addison v. Lochearn Nursing Home, LLC,* 411 Md. 251, 983 A.2d 138 (2009) and *Schuele v. Case Handyman and Remodeling Services, LLC,* 412 Md. 555, 989 A.2d 210 (2010).

The Majority opinion rejects both of those propositions— correctly, in my view. However, the Majority opinion then outlines an alternative theory—quite at odds with the argument of Respondents—to reach the same result. For the reasons explained below, that alternative theory is inconsistent with the General Assembly's intent when it enacted and later recodified the Maryland Uniform Arbitration Act. Accordingly, the answer the Majority opinion reaches is a mistake.

To understand, a little history is necessary.

*1956 Uniform Arbitration Act*

The Uniform Arbitration Act was a model law developed by the National Conference of Commissioners on Uniform State Laws ("Uniform Law Commissioners"). The 1956 version of

the Act [1]—the version ultimately adopted by the Maryland General Assembly—was drafted by a special committee of the Uniform Law Commissioners. The general policy of the Act was to favor the referral of disputes to arbitration, particularly when the disputing parties had previously agreed to do so. *See* 7–IA Uniform Laws Annotated (2009) at 100 (Prefatory Note).

To further this policy favoring alternative dispute resolution via arbitration, the Act provided for an immediate appeal if a trial court refused to compel a party to participate in arbitration. Section 19 of the Uniform Act provided, in pertinent part:

(a) An appeal may be taken from:

(1) An order denying an application to compel arbitration made under Section 2;

. . .

(b) The appeal shall be taken in the manner and to the same extent as from orders or judgments in a civil action.

Uniform Arbitration Act (1956), § 19. The reference to "Section 2" in (a)(1) makes clear that the Act contemplated immediate appeals of orders in pending court proceedings, as Section 2 required that applications to compel arbitration be filed in a related court proceeding when such a proceeding existed and the court had jurisdiction to consider applications to compel arbitration. *See* Uniform Arbitration Act (1956), § 2(c). Thus, under the Act, if a party in a pending court proceeding moved to compel arbitration pursuant to an alleged pre-dispute arbitration agreement and the court denied that

---

1. The Uniform Law Commissioners had originally adopted a uniform arbitration law in 1925, although it was much criticized and the Commissioners withdrew it in 1943 and ultimately replaced it with the 1956 act. *See* 7–IA Uniform Laws Annotated (2009) at 99 (Historical Note).

The 1956 act was revised in 2000. *See* Uniform Arbitration Act (2000) in 7–IA Uniform Laws Annotated 1 (2009 & 2013 Cum. Supp.). Although a number of states have adopted the 2000 revision, the Maryland General Assembly has not done so.

motion, that party had a right to immediately appeal that order.

This understanding of the Uniform Arbitration Act is also reflected in other contemporary writings of the drafters of the Act. Shortly after the Act was adopted by the Uniform Law Commissioners, the Chairman of the Commissioners wrote a law review article about how it worked. M. Pirsig, *The New Uniform Arbitration Act*, 11 Bus. Law. 44 (1955–56). In that article, he described the appeal provision of the Uniform Act:

> Appeals likewise are commonly neglected in arbitration statutes. *Under the new act, the applicable orders are specifically designated and are confined to those final in nature, such as orders denying motions to compel arbitration* or granting motions to stay arbitration. Orders directing, or refusing to stay, arbitration are not appealable, but the point at issue can be raised on appeal from an order confirming the award should one be rendered.

*Id.* at 51 (emphasis added) (internal footnote omitted). Other commentators likewise noted that a denial of a motion to compel arbitration would be immediately appealable under the model law—a drafting decision that was part of the Act's policy favoring arbitration when an agreement between the parties provided for arbitration. *See, e.g.*, S. Gotshal, *Arbitration and the Lawyer's Place in the Business Community*, 11 Bus. Law. 52, 54 (1955–56).[2]

As is evident from the material quoted above, the authors of the Uniform Act considered the immediate appealability of a denial of a motion to compel arbitration to be perfectly

---

2. The public policy underlying the uniform law—and its relation to the appealability of decisions made under the law—was described as follows:

> The most important single fact about the uniform law is that it establishes public policy, once and for all, in favor of arbitration. This basic premise is manifested in every section of the document. For instance: ... (3) where a court directs arbitration, no appeal can be taken until after arbitration is had ...; (4) *on the other hand, if a court refuses to direct arbitration, that decision can be appealed upward;* ....

S. Gotshal, *supra*, 11 Bus. Law. at 54 (emphasis added).

consistent with a final judgment rule. Indeed, the Prefatory Note to the 1956 Uniform Act explained that "[t]he section on Appeals is intended to remove doubts as to what orders are appealable and to limit appeals prior to judgment to those instances where the element of finality is present." 7–IA Uniform Laws Annotated (2009) at 100 (Prefatory Note).

The logic of the Uniform Act's provision on appeals is straightforward. If the public policy expressed in the Uniform Act favors arbitration of disputes, that policy is likely to be frustrated unless an immediate appeal from a lower court decision denying arbitration is available. By definition, arbitration is an alternative to dispute resolution through litigation in the courts; if a party to an arbitration agreement must fully litigate the dispute judicially before that party can obtain appellate review of a decision denying an obligation to arbitrate, the benefits of resort to alternative dispute resolution are moot. *See* 21 Williston on Contracts § 57:61 (4th ed. 2013) (noting that an appeal of an order denying a motion to compel arbitration is immediately appealable under both the Uniform Arbitration Act and the Federal Arbitration Act).

The Uniform Arbitration Act, or substantially similar legislation, has been adopted in 49 jurisdictions. *See* 7–IA Uniform Laws Annotated 2 (2009 & 2013 Cum. Supp.).

*1965 Maryland Uniform Arbitration Act*

The Maryland General Assembly adopted the text of the Uniform Arbitration Act (1956) virtually verbatim in 1965. Chapter 231, Laws of Maryland 1965. In particular, the Legislature adopted the provision of the Uniform Act concerning appeals that allowed for immediate appeals of orders denying motions to compel arbitration. *See* Maryland Code, Article 7, § 18 (1968 Repl. Vol.). As indicated above, the Respondents in this case concede that the original enactment of the Maryland Uniform Arbitration Act provided for an immediate appeal of such an order.

*1973 Code Revision—the new Courts & Judicial Proceedings Article*

In 1973, the General Assembly, in one of the first episodes of the code revision saga in Maryland, created the Courts &

Judicial Proceedings Article ("CJ") and incorporated the Maryland Uniform Arbitration Act as part of that article. Chapter 2, First Special Session, Laws of Maryland 1973. As is the general rule in modern code revision, the purpose of the revision was to make changes in the form and style, not the substance, of the statutory law. *See* A. Wilner, *Blame it on Nero: Code Creation and Revision in Maryland* (February 14, 1994), available through the Archives of Maryland Online at <http://www.aomol.net/megafile/msa/speccol/sc2900/sc2908/ html/history.html>. In a contemporary law review article describing the creation of the Courts & Judicial Proceedings Article, the director of the code revision effort confirmed that its purpose was to "clarify[ ] the logical relationship among code provisions related to the judicial system, while avoiding any substantive change in these provisions. . . ." *See* W.H. Adkins, II, *Code Revision in Maryland: the Courts and Judicial Proceedings Article,* 34 Md. L. Rev. 7, 9 (1974).

In the code revision process, most of the Maryland Uniform Arbitration Act became Subtitle 2 of Title 3 of the new article. But the appeal provision of the Maryland Uniform Arbitration Act—former Article 7, § 18—was subsumed into Title 12 of the new article, which consolidated provisions concerning appeals. In reports and notes appended to the bill, the revisors made clear that the elimination of former Article 7, § 18 was not intended to effect a substantive restriction on the appealability of orders relating to arbitration.

For example, in their report explaining the incorporation of the Maryland Uniform Arbitration Act, the revisors stated:

The provisions of Art. 7, § 18 dealing with appeals are proposed for repeal because they are covered by Title 12 of the Courts Article. *This subtitle contains no substantive changes.* All provisions are reorganized to conform to the style of the Courts and other correlating articles.

Report No. 3F of the Governor's Commission to Revise the Annotated Code (July 16, 1973) at 27 (emphasis added). In another report concerning Title 12 of the new article, the revisors reiterated that former Article 7, § 18 was one of

several statutes now subsumed into the new Courts & Judicial Proceedings § 12–301—the final judgment rule. *See* Report No. 3B of the Governor's Commission to Revise the Annotated Code (September 21, 1972) at 4. The revisors explained that the purpose of eliminating a number of special statutory appeal provisions was not to limit appeal rights under those statutes but to eliminate a "trap for . . . unwary" drafters of future legislation.[3] In the Revisor's Note to Title 12 of the Courts & Judicial Proceedings Article, the revisors indicated that the elimination of former Article 7, § 18, as well as special appeal provisions in other statutes, was not intended to restrict existing appeal rights, but rather to incorporate them through "broad general language . . . unless the legislature *expressly* decides to deny them." Chapter 2, First Special Session, Laws of Maryland 1973 at 355 (emphasis added). The revisors specifically identified only one provision of former Article 7, § 18 that might authorize an appeal from an interlocutory judgment and included that provision in new CJ § 12–303 concerning permissible interlocutory appeals; the revision clearly treated the remaining appeal provisions— including that pertaining to orders denying motions to compel arbitration—as final judgments. *Id.* at 358–59.[4]

---

3. The concern was that case law, not reflected in the existing general appeal statute, had established that, when a law court—as distinct from an equity court—exercised "special, limited, statutory jurisdiction," no appeal was permitted unless specifically provided for by the statute. *See* Revisor's Note to CJ § 12–301, Chapter 2, First Special Session, Laws of Maryland 1973 at p. 355; Report 3B at 4; Adkins, *supra*, at 50. This was not a concern related to the Maryland Uniform Arbitration Act which, as indicated earlier, specifically provided for appeals, including appeals from a denial of motion to compel arbitration. The "fix" in code revision—which arguably broadened appeal rights—had no effect on appeals under the arbitration statute. *Cf. In re Matter of Anderson,* 20 Md.App. 31, 39, 315 A.2d 540 (1974) (explaining that the revision was not intended to affect appeals in juvenile proceedings).

4. The Revisors' Note explained:
 . . . Sec. 18 [of the Maryland Uniform Arbitration Act] deals with appeals with respect to arbitration and award. *Most of its language deals with appeals from final judgments and is thus covered by § 12–301.* The particular provision contained in [§ 12–303] might author-

Nothing in the revisors' notes, reports, or other contemporary legislative materials suggested that the code revision bill would limit appeal rights previously granted or, in particular, eliminate an existing appeal right under the Maryland Uniform Arbitration Act. Indeed, in certain respects, the catch-all language of CJ § 12–301 expanded appeal rights with respect to some matters related to arbitration. *See Litton Bionetics, Inc. v. Glen Construc. Co.*, 292 Md. 34, 39–42, 437 A.2d 208 (1981) (order concerning consolidation of two arbitration proceedings appealable as a final judgment under CJ § 12–301).

The Respondents ignore the contemporary legislative history and argue that the code revision bill silently reversed the legislative policy expressed in the original enactment of the Maryland Uniform Arbitration Act favoring such appeals. The Majority opinion correctly rejects the argument that the code revision committee was effecting a covert change in the right to appeal a denial of a motion to compel arbitration. *See* Majority op. at pp. 473–75, 82 A.3d at 876–77.

*The Regina Case*

In 1989, the Court of Special Appeals had occasion to review the legislative history of the Maryland Uniform Arbitration Act and, unsurprisingly, concluded that a denial of a motion to compel arbitration would be immediately appealable as a final order under CJ § 12–301. *Regina Construc. Corp. v. Envirmech Contracting Corp.*, 80 Md.App. 662, 565 A.2d 693 (1989) (Wilner, J.). In that case, a subcontractor in a construction project sued the general contractor to enforce an alleged commitment of the general contractor to provide financial assistance to the subcontractor in connection with the project. The general contractor sought to have the action dismissed or

ize an appeal from an interlocutory judgment and thus is included [in § 12–303].

Chapter 2, First Special Session, Laws of Maryland 1973 at 359 (emphasis added).

stayed on the ground that the parties' contract provided for the referral of disputes to arbitration.[5]

On behalf of the intermediate appellate court, Judge Wilner reviewed the original enactment of the Maryland Uniform Arbitration Act, including its provision for an immediate appeal, and the subsequent code revision. He concluded:

> In enacting the Courts and Judicial Proceedings Article, the General Assembly seemed to accept the notion that an order denying a petition or application to compel arbitration was immediately appealable, and indeed appeared to believe that it was appealable as a final judgment . . .

80 Md.App. at 670, 565 A.2d 693. Accordingly, the court held that the matter was properly before it as a final judgment under CJ § 12–301,[6] and went on to address the merits of the appeal.

Judge Wilner's analysis in *Regina* is true to the purpose of the Maryland Uniform Arbitration Act, true to the function of

---

**5.** The Court of Special Appeals noted the general contractor's "unfortunate insistence on a motion to dismiss rather than a petition to compel arbitration," but ultimately concluded that the circuit court's order denying that motion was "the functional equivalent of an order denying a motion to compel arbitration." 80 Md.App. at 666, 672, 565 A.2d 693.

**6.** The *Regina* court noted that a prior decision of the intermediate appellate court—issued before the merger of law and equity in Maryland civil procedure—had stated that the Maryland Uniform Arbitration Act contemplated that the exclusive method for compelling arbitration under the Act required resort to an equity court and that the Act was designed to allow immediate appeals of an equity court's denial of such an application. 80 Md.App. at 670–71, 565 A.2d 693 (discussing *Jos. Trionfo & Sons v. E. LaRosa & Sons*, 38 Md.App. 598, 381 A.2d 727 (1978)). At the time *Trionfo* was decided, the filing of a motion to compel arbitration in an action in a court of law did not adequately invoke an arbitration agreement and, as a result, the appeal provisions of the Act. The court's decision in *Trionfo* seems to be a straightforward application of the qualification in § 2(c) of the Uniform Arbitration Act, adopted in former Article 7, § 2, and recodified without substantive change in code revision, which limited appeals to situations in which the trial court had jurisdiction to consider the particular motion. With the subsequent merger of law and equity in the mid–1980s, the distinction noted in *Trionfo* no longer existed. *Regina*, 80 Md.App. at 670–71, 565 A.2d 693.

code revision, and straightforward in its logic. It provides a clear answer to the question on which we granted certiorari in this case.[7]

But it is sometimes the case that one loses sight of a cogent answer to one question when a related question demands a more complex analysis. Over the years, a parallel body of case law has developed, largely in the Court of Special Appeals, that analyzes the appealability of decisions concerning arbitration clauses, including motions to compel arbitration, from a different perspective. In my view, the intermediate appellate court arrived at the correct answer in those cases, although by a more convoluted route than the court in *Regina. Subsequent case law takes an alternative tack*

### Town of Chesapeake Beach

The case that spawned much of the later case law was *Town of Chesapeake Beach v. Pessoa Construc. Co.,* 330 Md. 744, 625 A.2d 1014 (1993). Unlike the instant case or *Regina, Town of Chesapeake Beach* did *not* involve a denial of a motion to compel arbitration. Rather, it concerned a denial of a petition to *stay* arbitration—a less favored order under the Uniform Arbitration Act. This Court concluded that an appeal of such an order in that case was viable because a circuit court could have designated it as a final judgment under Rule 2–602, and therefore an appellate court could properly enter a final judgment pursuant to Rule 8–602(e)(1)[8]; alternatively, the appeal would be proper under the collateral order doctrine.[9]

---

7. The Majority opinion properly acknowledges the significance of *Regina,* even though it was not cited by either party in their briefing of this case to us and to the Court of Special Appeals. Majority op. at 477–79, 82 A.3d at 879–80. The Majority opinion attempts to distinguish *Regina* but, for the reasons set forth later in the text, I do not find that attempt persuasive.

8. Among other things, Rule 8–602(e)(1) allows an appellate court to enter a final judgment on its own initiative if it determines that the order from which the appeal was taken was not a final judgment when the notice of appeal was filed, but that the lower court had discretion to direct entry of a final judgment pursuant to Rule 2–602.

9. The collateral order doctrine, originally developed by the Supreme Court in *Cohen v. Beneficial Indus. Loan Corp.,* 337 U.S. 541, 69 S.Ct.

The Court did not cite or discuss *Regina,* perhaps because *Regina* did not concern denial of a motion to *stay* arbitration, although nothing in the *Town of Chesapeake Beach* decision is inconsistent with *Regina.*

Even though *Town of Chesapeake Beach* did not involve an order denying a motion to compel arbitration, it is an important decision for our purposes. Subsequent appellate decisions have relied on its holding and rationale to conclude that an order denying a motion to compel arbitration may be certified as final under Rule 2–602 and Rule 8–602(e), seemingly on the assumption that such an order is not a final judgment under CJ § 12–301. But, until the instant case, Maryland courts have not revisited that assumption.

*Application of Town of Chesapeake Beach to orders denying motions to compel*

In 2002, the Court of Special Appeals applied the reasoning of *Town of Chesapeake Beach* in a case involving an appeal of a denial of a motion to compel arbitration to find the order immediately appealable. *NRT Mid–Atlantic, Inc. v. Innovative Properties, Inc.,* 144 Md.App. 263, 797 A.2d 824 (2002). Seemingly unaware of Judge Wilner's analysis in *Regina* and citing *Town of Chesapeake Beach,* the court appeared to assume that the order before it was an interlocutory order (like the order in *Town of Chesapeake Beach* ) that an appellate court had discretion to certify as final under Rule 8–602(e)(1). 144 Md.App. at 273–79, 797 A.2d 824. The court neither cited nor distinguished its own prior decision in *Regina,* which provided a more straightforward rationale for reaching the same result—*i.e.,* for holding that the order denying a motion to compel arbitration is immediately appealable.

The Court of Special Appeals continued to apply the *Town of Chesapeake Beach* analysis in subsequent cases concerning

1221, 93 L.Ed. 1528 (1949), allows for an immediate appeal of an order that conclusively determines an important issue that is separate from the merits of the litigation and that would be effectively unreviewable on appeal from a final judgment.

denials of motions to compel arbitration, again without any reference to its own, more directly applicable, decision in *Regina. See, e.g., Commonwealth Equity Services, Inc. v. Messick,* 152 Md.App. 381, 831 A.2d 1144 (2003); *All State Home Mortgage, Inc. v. Daniel,* 187 Md.App. 166, 977 A.2d 438 (2009). Thus, cases concerning the immediate appealability of a denial of a motion to compel arbitration were decided as an application of Rule 2–602 or Rule 8–602(e)(1)—appellate court certification of an order as a final judgment—rather than on the basis that the order was a final judgment under CJ 12–301, as *Regina* had determined.[10]

Eventually, our Court weighed in on this line of analysis in two recent cases—*Addison v. Lochearn Nursing Home LLC,* 411 Md. 251, 983 A.2d 138 (2009) and *Schuele v. Case Handyman and Remodeling Services,* 412 Md. 555, 989 A.2d 210 (2010).

*Addison and Case Handyman*

In *Addison* and *Case Handyman,* this Court rejected appeals involving denials of motions to compel arbitration.[11] Both of those cases were decided on the assumption that the court's jurisdiction of the appeal needed to be justified under

---

**10.** It may be that the *Regina* analysis has been overlooked in subsequent cases because it is not individually digested in the annotations to the Maryland Uniform Arbitration Act in the Michie version of the Courts & Judicial Proceedings Article and only appears under the heading "Miscellaneous" in the lengthy annotations to CJ § 12–301. Courts & Judicial Proceedings Article, § 12–301 (1998 Repl. Vol.).

**11.** As the Majority opinion observes, the Court did not grant certiorari in either of those cases to decide a question of appealability. In *Addison,* the Court granted certiorari to determine the merits of an order by the Court of Special Appeals compelling arbitration of consumer claims concerning an alleged real estate scam and a "sabotaged Medicaid application." The Court later requested supplemental briefs concerning the question of appealability, reversed the Court of Special Appeals on the basis, and never reached the merits of the question on which certiorari had been granted. Similarly, in *Case Handyman,* the petition for certiorari set forth three questions concerning the merits of an order requiring arbitration. This Court ultimately declined to address any of the questions on which it had granted certiorari and instead held that the Court of Special Appeals should not have entertained the appeal.

Rule 8–602(e)—by application of the *Town of Chesapeake Beach* analysis. As the Majority opinion indicates, neither decision resolved the question before us—whether an order denying a motion to compel arbitration is a final appealable order under CJ § 12–301. *See* Majority op. at 468, 82 A.3d at 873.

In *Addison,* a nursing home sued one of its residents to recover delinquent payments. The resident counterclaimed, alleging fraudulent acts by a nursing home employee, and the nursing home sought to compel arbitration of the counterclaim. The circuit court denied that motion and also denied the nursing home's request that it certify the order as final pursuant to Rule 2–602. On appeal, the Court of Special Appeals certified the order as final under Rule 8–602(e) and ordered arbitration. The Court of Appeals reversed, holding that the circuit court's denial of the request under Rule 2–602 precluded appellate certification of the order as final under Rule 8–602(e). The Court also held that such an order is not an interlocutory order that could be appealed pursuant to CJ § 12–303. This Court never considered whether the order was final under CJ § 12–301 and, like the previous decisions of the intermediate appellate court, did not cite or distinguish *Regina.*

*Case Handyman* involved a putative class action against a franchisor of home improvement companies by homeowners who had dealt with a franchisee that had gone bankrupt. The circuit court denied the franchisor's motion to have the dispute referred to arbitration pursuant to an arbitration clause in the home improvement contract. The Court of Special Appeals reversed that decision, holding that the arbitration clause was valid and enforceable. Consistent with the *Town of Chesapeake Beach* line of cases, this Court analyzed the appealability of the circuit court order on the assumption that it was an interlocutory order.[12] The Court held that the circuit court's

---

12. The Court's consideration of CJ § 12–301 was limited to the following sentence: "Because the Circuit Court's order did not adjudicate all claims in the action and was therefore not a final judgment as contemplated by § 12–301, we must treat this as an appeal from an interlocu-

order denying the motion to compel arbitration was "not final in the traditional sense" and therefore could not be certified by an appellate court as final under Rule 8–602(e). 412 Md. at 572, 989 A.2d 210. As in *Town of Chesapeake Beach,* the court went on to consider appealability under the collateral order doctrine, but found that the case did not satisfy all four prongs of that doctrine.

As noted earlier, Respondents argue that, in *Addison* and *Case Handyman,* this Court has already held that a denial of a motion to compel arbitration is not a final order for purposes of CJ § 12–301. A careful reading of the decisions reveals that neither case includes such a holding. The Majority opinion correctly rejects Respondents' effort to extrapolate those two cases. The question of whether the Legislature intended that such an order be treated as a final order has not been fully examined since *Regina.*

*The Majority Opinion*

I agree with much of the Majority opinion as it shares my rejection of the cornerstone arguments of the Respondents. I part ways near the end of the Majority opinion when, by sleight of hand, it comes to the same ultimate conclusion as the Respondents—that an order denying a motion to compel arbitration is not immediately appealable.

To reach that conclusion, the Majority offers an original construction of a portion of the Uniform Arbitration Act that was codified in former Article 7, § 18(b); as best I can determine, no other court in Maryland or elsewhere has construed this provision as the Majority now does.

As indicated earlier in this opinion, former Article 7, § 18(b) was derived from § 19(b) of the Uniform Arbitration Act (1956) concerning appeals and provided that "The appeal shall be taken in the manner and to the same extent as from orders or judgments in a civil action." *See* p. 480, 82 A.3d at 881

---

tory order." 412 Md. at 566, 989 A.2d 210. Of course, there was no need to give extended consideration to CJ § 12–301 under the *Town of Chesapeake Beach* line of cases.

above. The Majority asserts that this provision incorporates an understanding of the final judgment rule that precludes an immediate appeal of an order denying a motion to compel arbitration. Majority op. at 471–75, 82 A.3d at 875–77. The Majority cites no direct authority for this proposition.[13] A review of the annotations in the relevant volume of the Uniform Laws Annotated turns up no decision in any other jurisdiction that construes this provision of the Uniform Arbitration Act (1956) to embody a final judgment rule.[14]

To its credit, the Majority opinion recognizes that *Regina* contradicts its theory and attempts to distinguish that decision, but I find its discussion unpersuasive. The Majority opinion rejects Judge Wilner's analysis in *Regina* in favor of an earlier decision of the Court of Special Appeals that rejected an appeal on the basis that applications under the Uniform Arbitration Act had to be filed in a court of equity.[15] As pointed out in *Regina,* law and equity merged for purposes of civil procedure in the mid–1980s, and the characterization of a motion to compel as one or the other would seem to have little bearing in the present.

---

**13.** Indeed, if the Majority interpretation that were correct, then § 18 would have been internally inconsistent. There appears to be no dispute that the appeal authorized by § 18(a)(2)—an appeal of an order granting a stay of arbitration—could be an interlocutory order. See Revisor's Note to CJ § 12–303, Chapter 2, First Special Session, Laws of Maryland 1973, at pp. 358–59 (explaining that former Article 7, § 18(a) included both appeals from final judgments as well as an appeal that might be interlocutory). If, as the Majority opinion states, § 18(b) required compliance with the final judgment rule, then the right to appeal authorized by § 18(a)(2) would be negated by § 18(b).

**14.** Rather, courts have construed this provision to apply procedural rules for prosecuting appeals. *See, e.g., Snider v. Production Chemical Mfg., Inc.* 221 Or.App. 593, 191 P.3d 691, 695–96 (2008) (citing statute based on Uniform Arbitration Act (1956), § 19(b) when dismissing appeal for failure to comply with time deadlines).

**15.** *See* p. 486 n. 6, 82 A.3d at 884 n. 6 above. It is true that the court in *Trionfo* characterizes the denial of a separate petition in equity court as a "final judgment," which was certainly correct in the circumstances of that case. But, as indicated above, § 2(c) of the Uniform Arbitration Act, adopted as former Article 7, § 2(c), clearly contemplated the immediate appealability of a petition filed and denied in a pending court action.

In a footnote, the Majority opinion argues that the General Assembly has "acquiesced" in the idea that denial of a motion to compel arbitration is not a final judgment. Majority op. at 475 n. 19, 82 A.3d at 877–78 n. 19. The theory of "legislative acquiescence" is an inference drawn from legislative inaction following a contemporaneous interpretation of a statute by the Court. Sutherland Statutes and Statutory Construction § 49.9.

This case would seem to be an unlikely candidate for resort to a theory of legislative acquiescence for several reasons. First, as the Majority concedes, this Court has not previously decided directly whether denial of a motion to compel arbitration is a final order under CJ § 12–301. The only case that squarely addressed that question under current Maryland civil procedure—*Regina*—held that such an order is a final judgment. Second, even if this Court had previously addressed the issue, the inference of legislative acquiescence is most meaningful when bills have been introduced in the General Assembly to reverse the Court's holding, and the Legislature has declined to do so.[16] That is not the case here. Finally, even if these two requisites pertain, legislative inaction has often been called a "weak reed upon which to lean." [17]

In sum, we have not decided the issue previously and the Legislature has not declined to overrule a decision we have not made. It is difficult to describe these circumstances as "legislative acquiescence."

The bottom line of the Majority opinion is that the Maryland Uniform Arbitration Act from its inception to the present allows an immediate appeal of denial of an application to compel arbitration that is filed as a separate action, but does not allow for an immediate appeal if the application is filed in a related pending proceeding—even if the dispute, the parties, and the alleged arbitration agreement are identical. But this

---

16. *See, e.g., Moore v. State*, 388 Md. 623, 641–42, 882 A.2d 256 (2005).

17. *See, e.g., Sherwood Brands v. Great American Ins. Co.*, 418 Md. 300, 321 n. 16, 13 A.3d 1268 (2011).

result sacrifices fidelity to the legislative purpose to formality without substance.

If the underlying concern of the Majority opinion is that arbitration has been extended and imposed on parties not within the original contemplation of the Legislature, I share that concern. One might reasonably question whether a system that prefers to funnel disputes away from the courts to alternative tribunals such as private arbitration is consistent with the basic design of our government, especially when the arbitration requirement derives from a contract involving parties with grossly unequal bargaining power.[18] But that is not

---

18. It is apparent from the law review articles describing the Uniform Arbitration Act at its inception that the drafters contemplated that arbitration would be utilized largely in the context of commercial and labor-management disputes. *See* M. Pirsig, *supra*, 11 Bus. Law. at 44, 47; S. Gotshal, *supra*, 11 Bus. Law. at 52–53, 59. The proliferation of contractual arbitration provisions has been described:

Until recently, arbitration reigned in two domains: commercial transactions and labor-management relations. Businesspersons generally chose arbitration over litigation for several reasons. First, they preferred to select the people who would decide their disputes, often opting for decisionmakers with relevant expertise, rather than having courts assign generalist judges to their cases. Second, they tended to prefer resolutions based on commercial norms rather than legal standards that might be less appropriate for their disputes. Finally, they commonly anticipated that resolution by arbitration would be quicker and cheaper than court resolution, with its potential for protracted pretrial adversarialism, extensive discovery, and multiple appeals.

Labor unions and management included arbitration provisions in collective bargaining agreements for different, albeit overlapping, reasons. Both labor and management believed that resolving disputes through arbitration would minimize industrial conflict over worker grievances. They had more confidence in decisionmakers whom they selected from their own ranks than court-appointed judges from outside the affected industries. Furthermore, they wanted a conflict resolution process that would keep businesses running and avoid losses in productivity and employment. In both the commercial and labor-management domains, arbitration agreements were negotiated by sophisticated parties of approximately equivalent bargaining power who understood the benefits and costs of their bargains.

Over the past several decades, as a result of some remarkable lawmaking by federal and state appellate courts, the profile of arbitration has changed dramatically. Arbitration is no longer the prov-

the case or the question before us. And, when the question is before us, it should be dealt with head on as to the merits of the arbitration provision, not by sidestepping the issue by deciding the case on a formal question of appealability of an order concerning arbitration. *See* p. 489 n. 11, 82 A.3d at 886 n. 11 above.

A final observation: When it adopted the Maryland Uniform Arbitration Act, the General Assembly directed that it was to be "interpreted and construed so as to effectuate the general purpose to make uniform the law of the states which enact it." *See* Chapter 231, Laws of Maryland 1965, *now codified at* CJ § 3–232. Virtually every other state that has adopted the Uniform Arbitration Act provides for an immediate appeal of orders denying motions to compel arbitration, either as a final judgment or as a permissible interlocutory appeal. The reasons underlying that uniform statutory policy were described by the drafters of the Uniform Act, were adopted by the Maryland General Assembly, and were honored by the code revisors.

The Majority opinion posits instead that the Maryland statute never contemplated an immediate appeal from an order denying a motion to compel arbitration in a pending proceeding. If the Majority is correct, the inclusion of the word "Uniform" in the title of the "Maryland Uniform Arbitration Act" was a misnomer. *See* CJ § 3–234 (specifying short title of act).

---

ince of sophisticated participants. Instead, individuals pursuing long-established statutory claims, such as those brought under the federal securities and antitrust laws, and newer but long-sought civil rights claims, including race, sex, age, and disability discrimination, may now be forced to arbitrate if the parties are deemed to have assented to a predispute arbitration clause. Consumer claims have followed a similar course, such that consumers who enter into contracts that substitute binding arbitration for the public court system may be required to arbitrate disputes that arise in the course of their relationships with service or product providers.
L.J. Demaine & D.R. Hensler, *"Volunteering" to Arbitrate Through Predispute Arbitration Clauses: The Average Consumer's Experience,* 67 Law & Contemp. Prob. 55 (2004).

**496** 

*Conclusion*

In the end, the question is whether the Legislature intended that a denial of a motion to compel arbitration should be immediately appealable, whether filed in a pending proceeding or as an independent action. As explained above, in my view, the answer is "yes." [19]

---

19. My dissent is only as to the issue of appealability. I do not express any views on the merits of the appeal—*i.e.,* whether this particular dispute is subject to arbitration under the arbitration clause of the parties' contract or whether the dispute must be referred to an arbitrator to determine its arbitrability.