**REPORTED**

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 2602

September Term, 2014

_____

FUTURECARE NORTHPOINT, LLC

v.

VALERIE PEELER

_____

Eyler, Deborah S.,
Arthur,
Wilner, Alan M.
  (Retired, Specially Assigned),


JJ.
_____

Opinion by Arthur, J.
_____

Filed:  July 28, 2016

FutureCare NorthPoint, LLC, filed a petition to compel Valerie Peeler to arbitrate a wrongful death claim that Ms. Peeler had asserted in a separate lawsuit. FutureCare contended that Ms. Peeler should be required to arbitrate her wrongful death claim, because the decedent, Ms. Peeler's mother, had signed an arbitration agreement upon being admitted to a FutureCare nursing facility. The circuit court denied FutureCare's petition to compel arbitration.

FutureCare appealed. It presents an issue that both parties characterize as a matter of first impression in Maryland: "Whether wrongful death beneficiaries are bound by a valid and enforceable agreement signed by their decedent."

On its own motion, this Court raised the issue of whether a party has the right to appeal from an order denying a petition to compel arbitration when, as in this case, it is brought as an independent action, and not as a motion in the existing action commenced by the person whom the party seeks to compel to arbitrate.

On the threshold issue, we hold that an order denying an independent, free-standing petition to compel arbitration is a final judgment from which the aggrieved party has the right to appeal. On the merits, we hold that a decedent's arbitration agreement ordinarily does not bind the decedent's family members to arbitrate a claim under the Maryland wrongful death statute. Because the circuit court correctly refused to compel arbitration, we affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

### A.     The Arbitration Agreement Between FutureCare and Peeler's Mother

In February 2012, Phyllis Butz was admitted as a resident at the FutureCare

NorthPoint skilled nursing facility in Baltimore County. At the time of her admission, Mrs. Butz executed a written agreement to resolve a broad range of potential controversies by binding arbitration pursuant to the Maryland Uniform Arbitration Act (MUAA). The scope of the agreement extended to "any action, dispute, claim or controversy of any kind . . . now existing or hereafter arising between the parties in any way arising out of, pertaining to or in connection with or relating to" the provision of services by FutureCare, acts or omissions of FutureCare's agents, as well as "any survival action or wrongful death claim[.]"

Another section of the agreement stated it would "inure to the direct benefit of and bind the parties and their respective personal representatives, heirs, successors and assigns, including . . . all persons whose claims derive through, or on behalf of, the Resident, including those of any parent, spouse, child, guardian, executor, administrator, legal representative, or heir of the Resident, as well as any survivor or wrongful death claim [*sic*] . . . ." The agreement further stated that the parties were "each relinquishing and waiving their right under applicable law to have any claim decided in a court of law before a judge and/or a jury."

While she was a resident at the facility, Mrs. Butz received medical care from FutureCare employees. Mrs. Butz died on March 24, 2012. She was survived by her daughter, Ms. Peeler.

In pre-litigation discussions, FutureCare informed Ms. Peeler of the arbitration agreement that Mrs. Butz had signed. Ms. Peeler declined FutureCare's request to resolve claims arising from her mother's death through arbitration.

**B.     Peeler's Wrongful Death Action Against FutureCare**

On August 1, 2014, Ms. Peeler filed a complaint against FutureCare in the Circuit Court for Baltimore County.  The action was designated as *Valerie Peeler v. 1046 North Point, LLC*, Case No. 03-C-14-8301.

Ms. Peeler's complaint contained a single count for wrongful death as a result of medical malpractice.  Ms. Peeler sought to recover damages under Maryland's wrongful death statute for the mental anguish, emotional pain and suffering, and loss of society, comfort, advice, and guidance that she claimed to have experienced as a result of her mother's death.  She requested a jury trial.

As an affirmative defense, FutureCare asserted that Ms. Peeler's wrongful death claim was "subject to an enforceable binding arbitration agreement[.]"  FutureCare moved to stay the proceedings pending the outcome of a separate petition to compel arbitration.

**C.     FutureCare's Separate Petition to Compel Arbitration**

On August 25, 2014, FutureCare commenced a separate and independent action in the circuit court by filing a petition for an order to arbitrate pursuant to Md. Code (1974, 2013 Repl. Vol.), § 3-207 of the Courts and Judicial Proceedings Article ("CJP").  This action, *FutureCare North Point, LLC v. Valerie Peeler*, was assigned case number 03-C-14-9157.

In its petition, FutureCare asserted that it had entered into a valid and enforceable arbitration agreement with the decedent, Mrs. Butz.  FutureCare asked the court to "enforce the parties' Arbitration Agreement and [o]rder [Ms. Peeler] to arbitrate the

medical negligence claim against [FutureCare]."

Ms. Peeler opposed the petition. She denied the existence of an agreement between herself and FutureCare. She asserted that she had never signed the agreement, had never intended to be bound by the agreement, had never given her mother authority to enter an agreement on her behalf, was not a third-party beneficiary of the agreement, and had never attempted to enforce any of its provisions.

On its own motion, the court consolidated the wrongful death action with the action to compel arbitration. Nonetheless, the court maintained separate files for the two actions.

### D. Denial of the Petition to Compel Arbitration

On January 13, 2015, the circuit court held a hearing in the two, consolidated cases to determine whether Ms. Peeler should be compelled to arbitrate. At the hearing, the court rejected the argument that Ms. Peeler was bound by Mrs. Butz's agreement to arbitrate. On that basis, the court announced that the "Petition for Order of Arbitration [wa]s denied."

FutureCare requested clarification about whether the court intended to issue a final order in its freestanding action to compel arbitration. The hearing judge concluded that the two actions had been consolidated for a "limited purpose," but that the cases were "not joined for the merits" and ultimately would "be treated separately[.]"

After the hearing, the judge signed an order stating that FutureCare's petition to compel arbitration was denied and that that action was no longer consolidated with the tort litigation in Case No. 03-C-14-8301. The order included language, which had been

-4-

drafted by FutureCare, stating that the order would "constitute a final, appealable order as to the issue of arbitration pursuant to Maryland Rule 2-602(b) in case No. 03-C-14-9157."

On January 27, 2015, the clerk docketed the order in FutureCare's freestanding action to compel arbitration. A week later, FutureCare filed a notice of appeal from that order.

Separately, FutureCare moved to stay proceedings in Ms. Peeler's wrongful death case pending the outcome of its appeal in the other case. The court granted that motion.

## APPELLATE JURISDICTION

Except in a case involving one of the narrow exceptions under CJP § 12-303, the collateral order doctrine, or Rule 2-602(b), a party may appeal only from a final judgment on the merits. *See*, *e.g.*, *Addison v. Lochearn Nursing* Home, LLC, 411 Md. 251, 273 (2009); CJP § 12-301. An appellate court has the power to dismiss an appeal on its own motion if the appeal is not allowed by rule or by other law. *See* Md. Rule 8-602(a)(1). This Court must resolve any serious question as to its jurisdiction even if the parties have overlooked the issue or would prefer an immediate appellate determination. *See, e.g.*, *Baltimore Cnty. v. Baltimore Cnty. Fraternal Order of Police Lodge No. 4*, 439 Md. 547, 561-62 (2014); *Zilichikhis v. Montgomery Cnty.*, 223 Md. App. 158, 172, *cert. denied*, 444 Md. 641 (2015).

After the parties submitted their appellate briefs, this Court ordered them to show cause in writing why the appeal "should not be dismissed as an impermissible interlocutory appeal" and to address "whether the circuit court's January 27, 2015 order

-5-

complied with both the procedure and the substance of Rule 2-602(b)[.]" In pertinent part, that Rule provides: "If the court expressly determines in a written order that there is no just reason for delay, it may direct in the order the entry of a final judgment . . . as to one or more but fewer than all of the claims or parties[.]" Md. Rule 2-602(b)(1).

FutureCare responded that the appeal should not be dismissed because the order denying the petition to compel was not an interlocutory order in Ms. Peeler's wrongful death case, but rather the final judgment in FutureCare's separate, freestanding action under the MUAA. According to FutureCare, the order had mentioned Rule 2-602(b) only "to avoid any shadow of doubt" about whether the court intended to render a final decision. Ms. Peeler did not dispute the contention that FutureCare had the right to appeal from the order denying the MUAA petition.

We conclude that, although Rule 2-602(b) does not apply in this case, the order was nevertheless appealable under CJP § 12-301 as the final judgment entered in a civil case.

"[A] party may appeal from a final judgment entered in a civil or criminal case by a circuit court." CJP § 12-301. An order of the circuit court is a final judgment if it has three attributes: "(1) it must be intended by the court as an unqualified, final disposition of the matter in controversy, (2) unless the court acts pursuant to Maryland Rule 2-602(b) to direct the entry of a final judgment as to less than all of the claims or all of the parties, it must adjudicate or complete the adjudication of all claims against all parties; (3) it must be set forth and recorded in accordance with Rule 2-601." *Metro Maint. Sys. South, Inc. v. Milburn*, 442 Md. 289, 298 (2015) (citing *Rohrbeck v. Rohrbeck*, 318 Md. 28, 41

-6-

(1989)). In addition, each judgment must be set forth on a separate document signed by the judge or clerk. *See* Md. Rule 2-601(a); *Hiob v. Progressive American Ins. Co.*, 440 Md. 466, 478-79 (2014).

The order that denied FutureCare's freestanding petition to compel arbitration easily satisfies most of the elements of a final judgment. The judge signed a document that denied all relief in unqualified terms, and the clerk memorialized the denial of relief in a proper docket entry. The document, consistent with the oral comments at the hearing, expressed the judge's subjective intention that the order would "constitute a final, appealable order as to the issue of arbitration[.]" The remaining question is whether the court's ruling was sufficiently final in its nature so that it could have been entered as a final judgment.[1]

By way of dicta, the Court of Appeals has commented that "[a]n order denying a claim that arbitration should be compelled in an action in which that is the sole claim asserted is an appealable judgment." *Hartford Accident & Indem. Co. v. Scarlett Harbor*

---

[1] An order is final if has "the effect of terminating the proceedings in a particular court" notwithstanding "the availability of another forum in which the parties may litigate their dispute[.]" *Metro Maint. Sys.*, 442 Md. at 300; *see Brewster v. Woodhaven Bldg. & Dev., Inc.*, 360 Md. 602, 623 (2000). Consequently, an order compelling arbitration of an entire dispute is a final judgment because that order deprives the plaintiff "of the means, in that case before the trial court, of enforcing the rights claimed" and "effectively terminates that particular case before the trial court." *Horsey v. Horsey*, 329 Md. 392, 402 (1993); *see also Walther v. Sovereign Bank*, 386 Md. 412, 420-22 & n.4 (2005). In other words, an order that puts the parties out of court by *granting* a freestanding petition to compel arbitration is an appealable, final judgment. *See U.K. Constr. & Mgmt., LLC v. Gore*, 199 Md. App. 81, 88 (2011). The present case, however, involves the *denial* of a freestanding petition to compel arbitration, which allows a substantive dispute to go forward in court.

*Assocs. Ltd. P'ship*, 346 Md. 122, 126 n.5 (1997) (citing *Litton Bionetics, Inc. v. Glen Constr. Co.*, 292 Md. 34, 41-42 (1981)). This Court, also in dicta, has similarly observed that:

> [B]y statute, a petition to compel arbitration may properly be filed as a free-standing action against the party refusing to submit the dispute to arbitration. In that situation, a court's order deciding such an action disposes of the action in its entirety, regardless of whether the order grants or denies the petition. Once the court orders arbitration, or denies it, there is nothing left for it to do. Accordingly, the court's order is a final judgment under [CJP §] 12-301.

*NRT Mid-Atlantic, Inc. v. Innovative Props., Inc.*, 144 Md. App. 263, 277 (2002) (citation omitted); *see All State Home Mortg., Inc. v. Daniel*, 187 Md. App. 166, 178, *cert. denied*, 410 Md. 560 (2009); *Essex Corp. v. Susan Katharine Tate Burrowbridge, LLC*, 178 Md. App. 17, 30 (2008); *Rourke v. Amchem Prods., Inc.*, 153 Md. App. 91, 107 (2003), *aff'd*, 384 Md. 329 (2004); *Commonwealth Equity Servs., Inc. v. Messick*, 152 Md. App. 381, 392, *cert. denied*, 378 Md. 614 (2003).[2]

If the Maryland appellate decisions are any indication, most litigants do not attempt to compel another party to arbitrate by filing a separate, independent, and freestanding petition to compel as FutureCare did in this case, but by filing a motion to compel in an existing action commenced by the party who is allegedly required to

---

[2] In *Addison v. Lochearn Nursing Home, LLC*, 411 Md. 251, 272-73 n.13 (2009), the Court of Appeals disapproved of two of the foregoing cases – *NRT Mid-Atlantic* and *Essex Corp.* – insofar as they held that an appellate court could employ Rule 8-602(e), the appellate analog of Rule 2-602(b), to review the denial of a motion to compel arbitration in a case commenced by the party who had refused to submit to arbitration. The Court did not disapprove of the dicta in those and other cases, that the denial of a freestanding petition to compel arbitration would dispose of that action in its entirety, leave nothing else for the court to do, and constitute a final judgment.

arbitrate. In a series of decisions between 2009 and 2013, the Court of Appeals held that when a court denies a motion to compel in an existing action commenced by the person who is allegedly required to arbitrate, the denial is neither a final judgment, nor is it appealable under any exception to the final judgment rule.

In *Addison v. Lochearn Nursing Home, LLC*, 411 Md. 251 (2009), and *Schuele v. Case Handyman & Remodeling Services, LLC*, 412 Md. 555 (2010), the Court of Appeals held that none of the exceptions to the final judgment rule authorized an immediate appeal from an order denying a motion to compel arbitration in an action brought by the person who is allegedly required to arbitrate. The Court specifically held that the denial of such a motion is not appealable under CJP § 12-303(3)(ix), which authorizes an interlocutory appeal from a (functionally identical) order *granting* a petition to *stay* arbitration. *See Schuele*, 412 Md. at 566-67; *Addison*, 411 Md. at 273-84. Nor can a court certify the denial of such a motion as a final judgment as to one or more but fewer than all the claims under Rule 2-602(b), because such the order "does not put the parties out of court" and into arbitration, but instead "keeps the parties in court to litigate the claims remaining between them." *See Schuele*, 412 Md. at 572 (citing *Addison*, 411 Md. at 273). Finally, the denial of a motion to compel arbitration cannot satisfy the requirements of the collateral order doctrine, because, the Court said, the question of whether the case should have gone to arbitration in the first instance would be effectively reviewable on appeal from the entry of a final judgment on the merits after the parties had fully litigated the case in court. *See Schuele*, 412 Md. at 572-77; *Addison*, 411 Md. at 284-86.

-9-

In *American Bank Holdings, Inc. v. Kavanagh*, 436 Md. 457 (2013), the Court resolved the remaining question of whether the denial of a motion to compel arbitration, filed in an existing action, is itself a final judgment under CJP § 12-301. In an action brought by Kavanagh, American Bank attempted to appeal from an order denying a motion that it styled as a petition to compel arbitration. *Id.* at 460-61. American Bank argued "that an order denying [a] petition to compel arbitration is an appealable final judgment regardless of whether it was filed as an independent action or filed in existing action." *Id.* at 471.

To address that argument, the Court began by acknowledging its prior dicta to the effect that "an order denying a petition to compel arbitration filed as an independent action . . . is appealable." *Id.* at 468 (citing *Hartford Accident & Indem.*, 346 Md. at 126 n.5). According to the Court, those statements were not dispositive where "the appealability of an order denying a petition to compel arbitration filed in a case that is extant is at issue." *Kavanagh*, 436 Md. at 468. The Court then analyzed the holdings of *Addison* and *Schuele*, taking great care to clarify that those cases involved "[t]he denial of petitions to compel arbitration filed in existing actions[.]" *Kavanagh*, 436 Md. at 468; *see id.* at 470 (stating that *Schuele* concerned "an order denying a motion to compel arbitration filed in an existing action"); *id.* at 471 (same). The Court narrowed its focus to "whether a circuit court's denial of a motion or petition to compel arbitration filed in an existing action is a final judgment[.]" *Id.* at 471; *see also id.* at 474 (characterizing American's position as the argument that "the order denying its petition to compel arbitration filed in an existing action is immediately appealable").

-10-

Ultimately, the Court concluded that "[t]he denial of American's petition to compel arbitration filed in an existing action . . . [wa]s not immediately appealable as a final judgment, because that denial did not put the parties out of court by terminating the proceedings." *Id.* at 475. The Court reiterated that "[a]n order denying a request to compel arbitration, styled as a motion or petition, filed in an existing action" neither "decides and concludes the rights of the parties" nor "denies a party the means of further prosecuting or defending rights." *Id.* at 478. Such an order, the Court held, "cannot be viewed as a final judgment." *Id.* In the next clause, however, the Court took care to point out that "[a]n order denying a request to compel arbitration, styled as a motion or petition, filed in an existing action," is "*unlike that situation when a Petition to Compel Arbitration filed on its own is denied, which terminates the action.*" *Id.* at 478-79 (emphasis added). In so doing, the Court unmistakably signaled that the denial of a petition to compel arbitration may be an appealable final judgment if the petition is brought as a separate action in which the sole claim is the arbitrability of a dispute.[3]

Although it appears that no reported Maryland case has squarely decided the question that we face here, our answer is essentially a foregone conclusion after *Kavanagh*. FutureCare did not move to compel arbitration in an existing action; it initiated a separate, freestanding action to compel Ms. Peeler to arbitrate. The circuit

---

[3] In a lone dissent, Judge McDonald described the Court's holding as follows: "The bottom line of the Majority opinion is that the [MUAA] . . . allows an immediate appeal of denial of an application to compel arbitration that is filed as a separate action, but does not allow for an immediate appeal if the application is filed in a related pending proceeding[.]" *Kavanagh*, 436 Md. at 493 (McDonald, J., dissenting).

court's order fully adjudicated the only claim in the separate action, denied all of the relief sought by FutureCare in that action, and completely terminated that case. Consequently, under CJP § 12-301, FutureCare has the right to appeal from the final judgment in the separate action to compel Peeler to arbitrate. *See Kavanagh*, 436 Md. at 468.

Because FutureCare appealed from a final judgment, it was unnecessary to attempt to rely on any of the exceptions for appeals from certain interlocutory orders. Nevertheless, the order purported to grant a final judgment "pursuant to Maryland Rule 2-602(b)." This invocation of Rule 2-602 was misguided, but inconsequential.

Rule 2-602 relates to actions that involve multiple claims or more than two parties. It expressly governs orders *not* disposing of an entire action. "By its very terms, Rule 2-602 is inapplicable to separate actions even though they are tried together." *Unnamed Att'y v. Att'y Grievance Comm'n*, 303 Md. 473, 484 (1985) (citing *Coppage v. Resolute Ins. Co.*, 264 Md. 261 (1972)). A different rule governs the consolidation of separate actions: "When *actions* involve a common question of law or fact or a common subject matter, the court, on motion or on its own initiative, may order a joint hearing or trial or consolidation of any or all of the claims, issues, or actions." Md. Rule 2-503(a)(1) (emphasis added). "In the trial of a consolidated action, the court may direct that joint or separate verdicts or judgments be entered." Md. Rule 2-503(b).

The Court of Appeals has explained that "when the circuit court enters a judgment disposing of one case, that judgment is appealable despite the pendency of unresolved claims in another case consolidated with it." *Yarema v. Exxon Corp.*, 305 Md. 219, 236

(1986); *see Cnty. Comm'rs of Carroll Cnty. v. Carroll Craft Retail, Inc.*, 384 Md. 23, 33 n.5 (2004). "[U]nless the trial court clearly intends that a joint judgment be entered disposing of all cases simultaneously, consolidated cases are not to be treated as a single action for purposes of Rule 2-602; instead, each one of the cases is to be treated as a separate action." *Yarema*, 305 Md. at 236.[4]

The circuit court used Rule 2-503 to consolidate FutureCare's freestanding petition to compel arbitration with the separate wrongful death action. The court did so for the limited purpose of a joint hearing on the issue of arbitrability. The post-hearing order stated that the two actions had been consolidated "solely to resolve the issue of arbitration and not for the merits[.]" As in *Yarema*, 305 Md. at 222-23, the court had maintained separate dockets for each action. Under these circumstances, neither the prior consolidation of the actions nor the pendency of claims in the separate wrongful death action prevents an appeal from the final judgment in the action to compel arbitration. *See Cole v. State Farm Mut. Ins. Co.*, 359 Md. 298, 304 n.5 (2000) (citing *Yarema*, 305 Md. at 236); *Unnamed Att'y*, 303 Md. at 484; *Bessette v. Weitz*, 148 Md. App. 215, 233 (2002); *Turner v. Turner*, 147 Md. App. 350, 384 (2002).

FutureCare's appeal from the final judgment in the MUAA action is properly before us, and we may resolve this case on the merits.

---

[4] *Compare Waterkeeper Alliance, Inc. v. Maryland Dep't of Agric.*, 439 Md. 262, 282 (2014) (judgment in one of two consolidated actions for declaratory relief was not final where the trial judge not only "intended to resolve both actions in a joint disposition," but "was compelled to do so, given the interconnectedness of the actions, the nature of the claims, and Maryland's policy disfavoring piecemeal appeals").

**DISCUSSION**

As phrased by FutureCare, this appeal involves the single issue of "[w]hether wrongful death beneficiaries are bound by a valid and enforceable agreement signed by their decedent[.]" FutureCare contends that the circuit court erred when it concluded that Ms. Peeler had no contractual obligation to arbitrate her wrongful death claim. Our task is to conduct an independent review of the correctness that conclusion. *See Thompson v. Witherspoon*, 197 Md. App. 69, 79-80 (2009) (applying de novo standard of review to circuit court's determination of whether non-signatory to an arbitration agreement could be compelled to arbitrate); *see also Holloman v. Circuit City Stores, Inc.*, 391 Md. 580, 588 (2006) (quoting *Walther v. Sovereign Bank*, 386 Md. 412, 422 (2005)).

## A.     The Contractual Nature of Arbitration Agreements

Under Maryland's arbitration statute, "a provision in a written contract to submit to arbitration any controversy arising *between the parties* in the future is valid and enforceable[.]" CJP § 3-206(a) (emphasis added). If a party to an arbitration agreement refuses to arbitrate, the other party may petition the court to order arbitration. CJP § 3-207(a). "If the opposing party denies existence of an arbitration agreement, the court shall proceed expeditiously to determine if the agreement exists." CJP § 3-207(b). Based on that determination, the court must either grant the petition and order arbitration or deny the petition. CJP § 3-207(c).

Contract principles govern a court's decision about the existence of an arbitration agreement. *Walther*, 386 Md. at 425. Although Maryland law "looks with favor upon arbitration as a method of dispute resolution, it does not look with favor upon sending

-14-

parties to arbitration when there is no agreement to arbitrate." *Town of Chesapeake Beach v. Pessoa Constr. Co., Inc.*, 330 Md. 744, 757 (1993). As the Court of Appeals has stated:

> Arbitration is a process whereby *parties voluntarily agree* to substitute a private tribunal for the public tribunal otherwise available to them. A party cannot be required to submit any dispute to arbitration that it has not agreed to submit. Arbitration is consensual; a creature of contract. As such, only those who consent are bound. In the absence of an express arbitration agreement, no party may be compelled to submit to arbitration in contravention of its right to legal process. . . . An arbitration agreement cannot impose obligations on persons who are not a party to it and do not agree to its terms.

*Curtis G. Testerman Co. v. Buck*, 340 Md. 569, 579 (1995) (citations omitted); *see id.* at 580 ("[n]o matter how broadly an agreement is construed, it cannot impose obligations on a person who is not a party to that agreement") (citations and quotation marks omitted).

FutureCare argues that its agreement with Mrs. Butz should be construed to effectuate the parties' intent and that any ambiguity should be resolved in favor of arbitrability. Those principles of construction are inapplicable here. "[T]he issue in this case is not whether otherwise enforceable arbitration clauses extend to the particular claims . . . but rather whether the arbitration provision[] . . . can be enforced against [Ms. Peeler] at all." *Thompson v. Witherspoon*, 197 Md. App. at 82.[5]

---

[5] FutureCare points out that, under some circumstances, a party to a contract containing an arbitration clause may compel a non-signatory to arbitrate certain claims. For instance, a third-party beneficiary may be required to arbitrate if he or she attempts to take advantage of provisions of a contract containing an arbitration clause. *See Hartford Accident & Indem. Co. v. Scarlett Harbor Assocs. Ltd. P'ship*, 109 Md. App. 217, 292-93 (1996), *aff'd*, 346 Md. 122 (1997); *Dist. Moving & Storage Co., Inc. v. Gardiner & Gardiner, Inc.*, 63 Md. App. 96, 101-03 (1985), *aff'd*, 306 Md. 286 (1986). Similarly, in

As an exception to the general rule that arbitration agreements impose no obligations on third parties, a third party may be required to arbitrate if that third party is acting in a representative capacity on behalf of a party to the agreement. For instance, in Maryland, most causes of action at law "survive" a party's death (CJP § 6-401(a)), and the decedent's personal representative may commence or maintain an action for the benefit of the decedent's estate. Md. Code (1974, 2011 Repl. Vol.), § 7-401(y)(1) of the Estates and Trusts Article. In a so-called survival action, "the decedent's personal representative 'is essentially bringing an action that the decedent could have brought had he or she not died.'" *State v. Copes*, 175 Md. App. 351, 364 (2007) (quoting *Lopez v. Maryland State Highway Admin.*, 327 Md. 486, 490 (1992)). In such an action, the personal representative "'serves as the posthumous agent of the [tort] victim[.]'" *John Crane, Inc. v. Puller*, 169 Md. App. 1, 95 (2006) (quoting *Globe American Cas. Co. v. Chung*, 76 Md. App. 524, 527 (1988), *vacated on other grounds*, 322 Md. 713 (1991)). In effect, the personal representative "steps into the shoes of [the] decedent[.]" *ACandS, Inc. v. Asner*, 104 Md. App. 608, 644 (1995), *rev'd on other grounds*, 344 Md. 155 (1996).

In *Dickerson v. Longorio*, 414 Md. 419 (2010), the Court of Appeals discussed whether a nursing home could compel the personal representative of a deceased

---

appropriate cases, a non-signatory may be estopped from avoiding arbitration if the non-signatory raises claims that are sufficiently connected with an agreement containing an arbitration provision. *See Thompson v. Witherspoon*, 197 Md. App. at 82-91 (analyzing various formulations of equitable estoppel). Although FutureCare makes vague allusions to these concepts, it does not expressly rely on either a third-party beneficiary theory or an equitable estoppel theory.

resident's estate to arbitrate a survival action. If the decedent had entered into a valid arbitration agreement, the nursing home unquestionably could have required the personal representative to arbitrate the survival claims. *See id.* at 426 n.2. Similarly, both parties to this case agree that FutureCare could compel Mrs. Butz's personal representative to arbitrate a survival claim brought on her estate's behalf.

But this case does not concern a survival claim. An action under Maryland's wrongful death statute is separate, distinct, and independent from a survival action, even when those actions arise out of a common tortious act. *See Georgia-Pacific Corp. v. Benjamin*, 394 Md. 59, 77 n.4 (2006) (explaining that wrongful death actions are separate and distinct from survival actions, so that "disposing of one does not automatically act as a bar to the other"); *Chung*, 76 Md. App. at 526-27 (explaining that even where wrongful death and survival actions result from a "common denominator fact that the victim has died," those "two types of claim are clearly distinct" in their "essential characteristics"). "[A]lthough those actions grow out of the same wrongful conduct, they are distinct: '[they] are by different persons, the damages go into different channels, and are recovered upon different grounds[.]'" *Smith v. Borello*, 370 Md. 227, 234 (2002) (quoting *Stewart v. United Elec. Light & Power Co.*, 104 Md. 332, 339 (1906)). By enacting Maryland's wrongful death statute, the General Assembly "created a new cause of action for something for which the deceased person never had, and never could have had[:] the right to sue . . . [for] the injury resulting from [the deceased person's] death." *Spangler v. McQuitty*, ___ Md. ___, ___, 2016 WL 3685198, at *9 (July 12, 2016) (quoting *Stewart*, 104 Md. at 341 (quoting *Tucker v. State ex rel. Johnson*, 89 Md. 471,

-17-

479 (1899))) (internal quotation marks omitted).

In its current form, the wrongful death statute authorizes an action "for the benefit of the wife, husband, parent, and child of the deceased person[.]" CJP § 3-904(a)(1). Wrongful death damages are awarded to those beneficiaries "proportioned to the injury resulting from the wrongful death." CJP § 3-904(c)(1). "While certainly based on the death of another person, [a wrongful death action] is not brought in a derivative or representative capacity to recover for a loss or injury suffered by that person but, rather, is brought by a spouse, parent, or child, or a secondary beneficiary who was wholly dependent on the decedent, to recover damages for his or her own loss accruing from the decedent's death." *Eagan v. Calhoun*, 347 Md. 72, 82 (1997).

When Ms. Peeler asserted her wrongful death claim against FutureCare, she was not a representative of her mother's estate seeking recovery for her mother's injuries; she was acting on her own behalf to recover for her own losses. The wrongful death action is, both in form and substance, a controversy between Ms. Peeler and FutureCare; it is not a continuation of any controversy between Mrs. Butz and FutureCare. Furthermore, Mrs. Butz never owned the right to recover damages under CJP § 3-904 for her own wrongful death, and hence she had no power to bind the person who has that right – Peeler – to an agreement to arbitrate. In short, notwithstanding that the agreement purports to require Peeler to arbitrate her wrongful death claims FutureCare, basic contract principles support the conclusion that she has no such obligation.

Lacking any conventional principle through which it could impose that obligation on Ms. Peeler, FutureCare argues that Ms. Peeler should be required to arbitrate on the

-18-

theory that the wrongful death action is "derivative upon the decedent's ability to maintain a claim."  As explained below, we reject that argument because a wrongful death action "is not derivative in the sense asserted."  *Eagan*, 347 Md. at 81-82.

### B.    The "Wrongful Act" Requirement of the Wrongful Death Statute

The wrongful death statute provides that "[a]n action may be maintained against a person whose wrongful act causes the death of another."  CJP § 3-902(a).  The term "'[w]rongful act'" means "an act, neglect, or default including a felonious act which would have entitled the party injured to maintain an action and recover damages if death had not ensued."  CJP § 3-901(e).  As the foundation of its argument that Ms. Peeler's wrongful death claim is "derivative" of her mother's personal injury claim, FutureCare relies on the statute's definition of a "wrongful act."

FutureCare writes, "[A]t no time before the decedent's death could she have maintained a cause of action . . . *in court* because . . . all such claims were subject to the parties' binding arbitration agreement."  (Emphasis added.)  FutureCare theorizes that, because Mrs. Butz, "by virtue of having signed an arbitration agreement, could not have pursued her own claim for damages *in the Circuit Court*," Ms. Peeler should also be precluded from maintaining an action in that court.  (Emphasis added.)

The statute, however, does not define a "wrongful act" as an act that would have entitled the victim to maintain an action "*in court*" or "*in the circuit court*"; it speaks only of an act that "would have entitled the party injured to maintain an action and recover damages."  Under fundamental principles of statutory construction, a court "may neither add nor delete language so as to reflect an intent not evidenced in the plain and

-19-

unambiguous language of the statute." *Peters v. Early Healthcare Giver, Inc.*, 439 Md. 646, 667 (2014) (citation and quotation marks omitted). The definition of "wrongful act" was satisfied, therefore, as long as Mrs. Butz would have been entitled "to maintain an action," which she was; it is immaterial whether she would have been entitled "to maintain an action" *in court*.

FutureCare does not really argue that its alleged negligence falls outside the statute's definition of a "wrongful act." Rather, FutureCare argues that the language defining a wrongful act as one that "would have entitled the party injured to maintain an action and recover damages if death had not ensued" (CJP § 3-901(e)) implies that wrongful death claimants take their claims subject to the same restrictions that would apply to injury claims by the decedent.

The statutory language itself does not express that intention. The statute does not require that a wrongful death claim be pursued in the same forum and manner as an action that could have been brought by the decedent, and the General Assembly presumably would have said so had it intended to attach those conditions to wrongful death actions. *Peters*, 439 Md. at 667. The acts alleged in a wrongful death complaint are still "[w]rongful act[s]" within the meaning of CJP § 3-901(e) even when the decedent has waived her right to assert her own injury claims in a particular forum.

Seeking support for its interpretation of the "wrongful act" requirement, FutureCare claims to rely on *Mummert v. Alizadeh*, 435 Md. 207 (2013). *Mummert* rebuts rather than supports FutureCare's position.

In *Mummert*, a patient died after limitations had run on her medical negligence claims. *Id.* at 210-11. Her surviving family members, the Mummerts, brought a wrongful death action within the three-year statute of limitations applicable to their claims. *Id.* at 211. The circuit court nonetheless dismissed the action, reasoning that the family members could not pursue their wrongful death claims because the patient herself could not have initiated a timely medical negligence action at the time of her death. *Id.* The Court of Appeals reversed. *Id.* at 232.

The Court recognized that the statutory definition of a "wrongful act" (an act that "would have entitled the party injured to maintain an action and recover damages") is ambiguous as to whether a wrongful death claimant's right to sue is contingent upon the decedent's ability to file a timely personal injury claim at the time of death. *Mummert*, 435 Md. at 218-19. Consequently, the Court looked to the General Assembly's purpose in enacting the wrongful death statute, which was "to compensate the families of the decedents, as opposed to the estates of the decedents[.]" *Id.* at 219. In view of that purpose, the Court reaffirmed earlier decisions[6] that held that a wrongful death action is "a new cause of action, separate and independent largely from the decedent's own negligence or other action or a survival action[.]" *Id.*

Notwithstanding Maryland's longstanding emphasis on the independent nature of a wrongful death action, Dr. Alizadeh argued that "a wrongful death action is more

---

[6] *See*, *e.g.*, *Stewart v. United Elec. Light & Power Co.*, 104 Md. 332, 341 (1906); *Tucker v. State ex rel. Johnson*, 89 Md. 417, 479 (1899).

derivative of the decedent's own action." *Mummert*, 435 Md. at 220. Addressing that contention, the Court recognized that, where certain defenses such as contributory negligence or assumption of risk would bar a decedent's injury claim, the wrongful death statute would also preclude a claim by the decedent's relatives. *Id.* at 220-21.[7] The Court reasoned that "[t]hose defenses are distinguishable from a statute of limitations defense, however, because, where those defenses apply, the decedent did not have a viable claim from the outset." *Id.* at 221.

Citing *State ex rel. Melitch v. United Railways & Elec. Co. of Baltimore*, 121 Md. 457 (1913), the Court recognized that a "release of a negligence claim by the decedent can bar the surviving relatives from bringing later a wrongful death action." *Mummert*, 435 Md. at 221. Nonetheless, the Court distinguished the running of limitations from a release on the ground that "a decedent who executes a release has acted affirmatively and purposefully to extinguish the underlying claim," whereas limitations may bar a claim even if the decedent did not intend to allow the statute to run. *Id.* at 221-22.[8]

---

[7] The Court cited the following cases in which it previously held that a wrongful death claim was barred because a defense would bar the decedent's underlying injury: *Frazee v. Baltimore Gas & Electric Co.*, 255 Md. 627 (1969) (contributory negligence); *Baltimore & Potomac R.R. Co. v. State ex rel. Abbott*, 75 Md. 152 (1892) (assumption of risk); *Smith v. Gross*, 319 Md. 138 (1990) (parental immunity); and *State ex rel. Bond v. Consol. Gas, Elec. Light & Power Co.*, 146 Md. 390 (1924) (no privity of contract between decedent and manufacturer).

[8] In fact, under Maryland law, limitations may run on a claim for medical negligence even before the plaintiff could reasonably know or suspect that he or she had such a claim. *See* CJP § 5-109(a) (requiring plaintiffs to assert claims for medical negligence within "the earlier of" five years after the injury or three years after the discovery of the injury).

The Court proceeded to reject Dr. Alizadeh's generalizations about the "derivative" nature of a Maryland wrongful death action:

> It is not wholly incorrect to state that a wrongful death claim is derivative of the decedent's claim in some sense. The two actions stem from the same underlying conduct, which must have resulted in the decedent having a viable claim when she was injured. That connection, however, does not compel the conclusion that all defenses applicable to the decedent's claim prior to her death would preclude necessarily maintenance of a wrongful death claim after the decedent's death. That the Legislature's purpose was to create a new and independent cause of action when it passed the wrongful death statute suggests that it did not intend for a statute of limitations defense against the decedent's claim to bar consequently a subsequent wrongful death claim.

*Id.* at 222.

Stated otherwise, it may be correct to say that a wrongful death action is "derivative" of the decedent's injury claim in the sense that "[t]he two actions stem from the same underlying conduct, which must have resulted in the decedent having a viable claim when she was injured." *Mummert*, 435 Md. at 222. On the other hand, it is incorrect to say that a wrongful death claim is "derivative" of a decedent's claim in the sense that "all defenses applicable to the decedent's claim prior to her death would preclude necessarily maintenance of a wrongful death claim after the decedent's death." *Id.*; *accord Eagan*, 347 Md. at 82 (explaining that a wrongful death claim "derives" from the decedent's underlying injury in the sense that it is "based on the death of another person" but not in the sense that it is "brought in a derivative or representative capacity to recover for a loss or injury suffered by that person").

FutureCare treats this key passage of *Mummert* as if it were a full-throated endorsement of its theory that a Maryland wrongful death claim is "derivative in certain

respects to the decedent's ability to maintain a claim[.]" It is not. When the *Mummert* Court wrote that it was "not wholly incorrect" to state that "in some sense" a "wrongful death claim is derivative of the decedent's claim," it was hardly approving of FutureCare's position that a wrongful death claimant takes the claim subject to all defenses that might apply to the decedent's claim. To the contrary, the *Mummert* Court expressly rejected "the conclusion that all defenses applicable to the decedent's claim prior to her death would preclude necessarily maintenance of a wrongful death claim after the decedent's death." *Mummert*, 435 Md. at 222.[9]

FutureCare emphasizes *Mummert*'s discussion of the "century-old precedent" of *Melitch*, which held that the contractual release of a decedent's claims can bar wrongful death claims based on the same underlying injuries. According to FutureCare, *Melitch* held that a decedent may enter into contracts that bind wrongful death beneficiaries. To the contrary, *Melitch* neither says nor implies that wrongful death beneficiaries are obligated to perform contractual promises made by a decedent.

---

[9] FutureCare employs this through-the-looking-glass approach at other points in its argument. In its initial brief, FutureCare quoted the following sentence: "'The Maryland law appears to be that if a decedent could not have brought a cause of action for injury at the time of death, the wrongful death action similarly is precluded.'" *Dehn v. Edgecombe*, 152 Md. App. 657, 695-96 (2003) (quoting *Burke v. United States*, 605 F. Supp. 981, 988 (D. Md. 1985)), *aff'd*, 384 Md. 606 (2005); *see Smith v. Gross*, 319 Md. 138, 143 n.4 (1990) (same sentence). In *Mummert*, however, the Court of Appeals characterized that statement as "dicta" that had been made "with understandable equivocation" (*id.* at 228) and without "the benefit of extensive briefing and argument." *Id.* at 229. "[U]pon considered reflection of the case law," the Court concluded "that the statement . . . was unfounded at the time of its adoption." *Id.* at 229. Accordingly, the Court disavowed its prior statements to the extent that they "appear inconsistent or in conflict" with *Mummert*. *Id.* at 230.

*Melitch* concerns "'the effect of a settlement made by the injured person in his lifetime'" on a subsequent wrongful death action. *Melitch*, 121 Md. at 463 (quoting *Stewart*, 104 Md. at 340). Several months after Melitch suffered an injury as a result of a railroad's alleged negligence, he "by deed, for a valuable consideration, released the [railroad] from all and every claim and demand which he might or could possibly have for or on account of his injuries." *Melitch*, 121 Md. at 458. His surviving wife pursued a wrongful death action as an equitable plaintiff, but the court granted judgment in favor of the railroad. *Id.* at 457. On appeal, the Court of Appeals considered whether the release "constitute[d] an *effectual* bar to a recovery" in the wrongful death action. *Id.* at 458 (emphasis added).

Much like the current wrongful death statute, the statute at that time created liability where a defendant's act resulted in the death of an injured party, and the act was "such as would (if death had not ensued) have entitled the party injured to maintain an action and recover damages[.]" Md. Code (1879), Art. 67, § 1. Following the consensus among other courts construing substantially identical language, the Court concluded that the decedent's release "constitute[d] a complete bar" to his surviving spouse's wrongful death action. *Melitch*, 121 Md. at 459. The Court explained that even though "the right of the relative named in the statutes is separate and distinct from that possessed by the deceased, . . . the right of the relatives is contingent on the death of the injured person without having satisfied his claim for damages." *Id.* at 460 (citations and quotation marks omitted).

FutureCare correctly describes the result of *Melitch*, but it mischaracterizes the

-25-

holding. The Court did not rely on any provision of the release that purported to bind his surviving family members. The Court did not state that that Melitch's agreement was "binding" upon his widow or "enforceable" against her. Rather, the Court concluded that, in extinguishing his own claim by releasing it in exchange for a sum of money that satisfied his claim for damages, Melitch had negated one element of the wrongful death action. *See id.* at 460. In sum, *Melitch* stands for the proposition that, under some circumstances, the pre-death release of a personal injury claim effectively prevents statutory beneficiaries from establishing an element of a wrongful death claim arising from the same injury.[10]

Ultimately, the claim in FutureCare's petition to compel arbitration is unlike any of the types of defenses that barred wrongful death actions in the cases analyzed by *Mummert*. Those cases turned on whether the alleged tortfeasor's act would have entitled the decedent "to maintain an action and recover damages if death had not ensued." CJP § 3-901(e). An injured party's contributory negligence, assumption of risk, or release may negate the ability "to maintain an action and recover damages." *See Mummert*, 435 Md. at 221. An injured party's agreement to arbitrate a personal injury claim, by contrast, does not negate the ability "to maintain an action and recover damages." In particular, an arbitration agreement does not destroy the viability of the underlying claim "from the

---

[10] FutureCare writes: "Just as an injured person's signature on a Release *bars* a future wrongful death claim, an injured person's signature on an arbitration agreement *binds* the wrongful death beneficiaries to arbitrating any subsequent wrongful death claim." (Emphasis added.) A statutory bar to recovery is not analogous to a contractual obligation to perform a promise.

outset[,]" (*id.*), nor does it "affirmatively and purposefully . . . extinguish the underlying claim" as does a pre-death release. *Id.* at 221-22.[11]

After briefing and argument in this case, the Court of Appeals issued its opinion in *Spangler v. McQuitty*, ___ Md. ___, 2016 WL 3685198 (July 12, 2016) (*Spangler III*), a case that involved issues similar to those in *Mummert*. In *Spangler III* the Court reaffirmed that the "Maryland wrongful death statute provides a new and independent cause of action." *Id.* at ___, 2016 WL 3685198, at *6. The Court specifically held that the statute "does not preclude a subsequent action brought by a decedent's beneficiaries, although the decedent obtained a personal injury judgment based essentially on the same underlying facts during his or her lifetime." *Id.* The Court was unpersuaded by the argument that the "wrongful act" requirement meant that a wrongful death claim is "'conditioned upon the decedent's ability to maintain a claim,' had death not ensued." *Id.* at ___, 2016 WL 3685198, at *10. The Court explained that it would be inconsistent with the purpose of the wrongful death statute to interpret a wrongful death action as being derivative of the decedent's personal injury claim. *Id.* at ___, 2016 WL 3685195, at *14. The Court further explained that "the phrase 'if death had not ensued'" in CJP §

_____

[11] FutureCare points out that under the Federal Arbitration Act arbitration agreements must stand on the "same footing" (*Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 219 (1985)) as other contracts. On the basis of that premise, FutureCare argues that it would violate the federal act to enforce the decedent's release against a wrongful death beneficiary, but not to enforce the decedent's arbitration agreement against a wrongful death beneficiary. FutureCare's argument misconceives the holding in *Melitch*. *Melitch* did not hold that the wrongful death beneficiaries were contractually bound by the decedent's pre-death release; it held that the release had the effect of extinguishing the wrongful death claims before they came into existence.

3-901(e) "pertains only to the character of the injury, and was not intended to be a procedural or jurisdictional prerequisite to a subsequent wrongful death action."  *Id.* at ___, 2016 WL 3685198, at *15.  In light of *Spangler III*, it would be a mistake to adopt the expansive reading of CJP § 3-901(e) suggested by FutureCare.[12]

In conclusion, neither the language of the Maryland wrongful death statute nor the cases construing that language support the conclusion that decedents may contractually obligate their statutory beneficiaries to arbitrate the beneficiaries' wrongful death claims.

### C.     Weight of Persuasive Authority from Other Jurisdictions

Looking beyond Maryland law, the parties present dueling contentions that the weight of authority from other jurisdictions supports their respective positions.  They each offer a roughly-equal number of out-of-state cases regarding arbitration of wrongful death claims under agreements made by decedents.  There is no clear majority view.

In *Mummert*, 435 Md. at 223, the Court of Appeals confronted a similar split of out-of-state authority regarding a person's ability to assert a wrongful death when limitations barred the decedent's own claim.  The Court observed that "courts in those jurisdictions holding that a wrongful death action is not contingent on the decedent's filing or ability to file a timely negligence claim before death tend to interpret their

---

[12] The Court refused to follow dicta from *Melitch* that suggested that a prior judgment in the decedent's personal injury action, like a release, would bar a subsequent wrongful death action based on the same injury.  *Spangler v. McQuitty*, ___ Md. at ___, 2016 WL 3685198, at *11.  The Court observed that some of *Melitch*'s analysis was "contrary to longstanding Maryland law that a subsequent wrongful death action brought by a decedent's beneficiaries is not barred by the disposition of a decedent's personal injury claim."  *Id.*  The Court declined to overrule *Melitch*, but it limited *Melitch*'s *holding* to the factual context of a release.  *Id.*

wrongful death statute, as we do in Maryland, as creating a new and independent cause of action." *Id.* at 225 (citing *Frongillo v. Grimmett*, 788 P.2d 102, 103 (Ct. App. Ariz. 1989); *Gramlich v. Travelers Ins. Co.*, 640 S.W.2d 180, 186 (Mo. Ct. App. 1982)). "Conversely, a number of those jurisdictions holding that a wrongful death claim is contingent on the decedent's bringing or ability to bring a timely negligence claim prior to death have less distinct and comparable wrongful death statute." *Mummert*, 435 Md. at 225-26 (citing *Russell v. Ingersoll-Rand Co.*, 841 S.W.2d 343, 347 (Tex. 1992)). The Court reasoned that opinions emphasizing the independent nature of wrongful death claims were relatively more persuasive than cases that emphasize the derivative nature of such a claim. *Mummert*, 435 Md. at 226.

A similar pattern exists in the cases deciding whether a decedent's arbitration agreement can bind the wrongful death beneficiaries. "[C]ourts in states where wrongful death actions are recognized as independent and separate causes of action are more likely to hold that the beneficiaries are not bound by a decedent's agreement to arbitrate, while beneficiaries in states where wrongful death actions are wholly derivative in nature are generally held to be bound by a decedent's arbitration agreement." *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 647 (Tex. 2009) (citations omitted); *accord Laizure v. Avante at Leesburg, Inc.*, 109 So.3d 752, 761-62 & n.3 (Fla. 2013); *Boler v. Sec. Health Care, LLC*, 336 P.3d 468, 472 (Okla. 2014).

Four of the cases cited by the parties are most salient for our present analysis: *Estate of Decamacho ex rel. Guthrie v. La Solana Care & Rehab, Inc.*, 316 P.3d 607 (Ct. App. Ariz. 2014); *Carter v. SSC Odin Operating Co., LLC*, 976 N.E.2d 344 (Ill. 2012);

*Lawrence v. Beverly Manor*, 273 S.W.3d 525 (Mo. 2009) (en banc); and *Peters v. Columbia Steel Castings Co.*, 873 N.E.2d 1258 (Ohio 2007). In those cases, the courts examined statutes with language that closely tracks the Maryland statute. *See Decamacho*, 316 P.3d at 612-13 (analyzing statute that created liability where the act that resulted in death was one that "would, if death had not ensued, have entitled the party injured to maintain an action to recover damages in respect thereof"); *Carter*, 976 N.E.2d at 354 (same); *Lawrence*, 273 S.W.3d at 527 (similar); *Peters*, 873 N.E.2d at 1261 (similar).

Like Maryland, each of those states has construed its wrongful death statute as creating a new and independent cause of action that does not belong to the decedent or the decedent's estate. *See Decamacho*, 316 P.3d at 613 (explaining that Arizona wrongful death statute "'confers an original and distinct claim for damages sustained by named statutory beneficiaries'" which is "'not derived from nor is it a continuation of claims which formerly existed in a decedent'") (citation omitted); *Carter*, 976 N.E.2d at 354 (Illinois wrongful death act "created a new cause of action that does not accrue until death" to recover for "'the injury suffered by the next of kin due to the loss of the deceased'") (citation omitted); *Lawrence*, 273 S.W.3d at 527 (Missouri wrongful death act "'creates a *new cause of action*'" that is "distinct from any underlying tort claims") (citation omitted); *Peters*, 873 N.E.2d at 1261 (Ohio wrongful death claim "belongs to the decedent's beneficiaries," and the Supreme Court of Ohio has "long recognized the separate nature" of such a claim). Of particular note, the Maryland Court of Appeals has identified Arizona and Missouri as states that "interpret their wrongful death statute, as

we do in Maryland, as creating a new and independent cause of action." *Mummert*, 435 Md. at 225.

In each of those four cases, the appellate court concluded that the decedent's arbitration contract did not require the decedent's statutory beneficiaries to arbitrate wrongful death claims based on the decedent's death. *See Decamacho*, 316 P.3d at 614-15 (reasoning that language in wrongful death statute describing the nature of the wrong "does not specify that a wrongful death claim must be pursued in exactly the same manner, such as through arbitration, as one brought by the decedent"); *Carter*, 976 N.E.2d at 359 ("[a]lthough a wrongful-death action is dependent upon the decedent's entitlement to maintain an action for his or her injury, had death not ensued, neither the Wrongful Death Act nor this court's case law suggests that this limitation on the cause of action provides a basis for dispensing with basic principles of contract law in deciding who is bound by an arbitration agreement"); *Lawrence*, 273 S.W.3d at 528-29 (explaining that, even though Missouri law treated wrongful death action as derivative of the underlying torts for venue purposes, "[a] claim for wrongful death is not derivative from any claims [the decedent] might have had," and therefore the decedent's arbitration agreement "cannot bind parties to the wrongful death suit"); *Peters*, 873 N.E.2d at 1262 ("the provision in the agreement binding [the decedent's] heirs, beneficiaries, successors, and assigns . . . could not restrict [the decedent's] beneficiaries to arbitration of their wrongful-death claims, because he held no right to those claims").[13]

---

[13] Beyond these four cases, Peeler notes that appellate courts in Kentucky,

The Arizona and Illinois courts further reasoned that an arbitration agreement is distinguishable from a decedent's pre-death release of a personal injury claim, which effectively bars a wrongful death action by extinguishing the underlying claim. *See Decamacho*, 316 P.3d at 614; *Carter*, 976 N.E.2d at 358-59. As discussed previously, we agree with that distinction.

FutureCare neither acknowledges the four main cases cited by Ms. Peeler, nor does it offer any good reason to distinguish them. Instead, FutureCare suggests that this Court should look to Texas, which it describes as a state with "wrongful death statutory language" and with a "judicial interpretation" of that language that is similar to that of Maryland. Only the first part of that comparison is correct.

In *Mummert*, the Court of Appeals recognized that the language of the Texas wrongful death statute closely matches that of the Maryland act (*Mummert*, 435 Md. at 224 n.8), but the Court went on to conclude that Texas's interpretation is not "comparable" to Maryland's interpretation of its statute. *Id.* at 226. In particular, Texas has interpreted its statute to mean that "'statutory beneficiaries of a deceased . . . have the same substantive rights to recover as the deceased would have had[.]'" *Id.* (quoting

---

Oklahoma, Pennsylvania, Utah, and Washington have reached similar conclusions under their own wrongful death statutes. *See Ping v. Beverly Enters., Inc.*, 376 S.W.3d 581 (Ky. 2012); *Boler v. Sec. Health Care, LLC*, 336 P.3d 468 (Okla. 2014); *Pisano v. Extendicare Homes, Inc.*, 77 A.3d 651 (Pa. Super. Ct. 2013); *Bybee v. Abdulla*, 189 P.3d 40 (Utah 2008); *Woodall v. Avalon Care Ctr.-Fed. Way, LLC*, 231 P.3d 1252 (Wash. Ct. App. 2010). In those cases, however, the statutes do not match the language of Maryland's statute as closely as do the statutes in the other four cases discussed above. Moreover, the courts from Kentucky, Oklahoma, and Utah decided the issue against the backdrop of state constitutional provisions that confer a special status upon wrongful death actions.

*Russell v. Ingersoll-Rand Co.*, 841 S.W.2d 343, 347 (Tex. 1992)).

Notwithstanding that *Mummert* discounted the value of Texas precedent in construing the Maryland wrongful death statute, FutureCare urges us to follow *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640 (Tex. 2009). In that case, the Supreme Court of Texas held that an arbitration agreement between an employee and employer required wrongful death beneficiaries to arbitrate their wrongful death claims against the employer even though they had not signed the agreement. *Id.* at 642. The Texas court explained that a Texas wrongful death action is "entirely derivative of the decedent's rights to have sued for his own injuries immediately prior to death." *Labatt*, 279 S.W.2d at 644 (citing *Russell*, 841 S.W.2d at 345-47). In other words, the beneficiaries under the Texas statute "stand in [the decedent's] legal shoes and are bound by his agreement." *Labatt*, 279 S.W.2d at 646. We decline to follow *Labatt* because in Maryland, unlike Texas, a wrongful death claim is a "new and independent cause of action," *Mummert*, 435 Md. at 225, which is not subject to "all defenses applicable to the decedent's claim prior to her death[.]" *Id.* at 222.

The *Labatt* court proceeded to observe that wrongful death beneficiaries typically are not bound by a decedent's promise to arbitrate "in states where wrongful death actions are recognized as independent and separate causes of action[.]" *Id.* at 647. We agree with that observation. We reach a different conclusion from *Labatt* in this case, because a Maryland wrongful death claim is derivative of the decedent's claims only in the limited sense that "[t]he two actions stem from the same underlying conduct, which must have resulted in the decedent having a viable claim when she was injured."

-33-

*Mummert*, 435 Md. at 222; *see also Eagan*, 347 Md. at 82.

FutureCare seeks additional support from other jurisdictions that have held that wrongful death beneficiaries can be compelled to arbitrate wrongful death claims based on a decedent's arbitration agreement. Not surprisingly, those courts express rationales similar to that of the Texas court. *See Briarcliff Nursing Home, Inc. v. Turcotte*, 894 So.2d 661, 664-65 (Ala. 2004) (holding that executor and administratrix of estates were bound by arbitration provisions adopted by decedents, because those representatives "'stand[] in the shoes of the decedent'" in wrongful death actions) (citation omitted); *Laizure v. Avante at Leesburg, Inc.*, 109 So.3d 752, 760-62 (Fla. 2013) (stating that "[n]o Florida decision has allowed a survivor to recover under the wrongful death statute where the decedent could not have recovered" and that under Florida law "[t]he estate and heirs stand in the shoes of the decedent") (citations and quotation marks omitted); *Sanford v. Castleton Health Care Ctr., LLC*, 813 N.E.2d 411, 422 (Ind. Ct. App. 2004) (arbitration clause bound personal representative to arbitrate wrongful death and survival action claims because Indiana law permitted personal representative to maintain action "only if the decedent, if alive, might have maintained such a cause of action"); *Ballard v. Sw. Detroit Hosp.*, 327 N.W.2d 370, 371 (Mich. Ct. App. 1982) (per curiam) (holding that Michigan wrongful death action is "a derivative one," in which "the representative in effect stands in the shoes of the decedent" and thus "[a]ny substantive impediment that would have prevented the decedent from commencing suit will likewise preclude suit by the personal representative"); *Cleveland v. Mann*, 942 So.2d 108, 118-19 (Miss. 2006) (rejecting view that Mississippi wrongful death claim "belongs solely to the heirs of the

-34-

deceased" and stating that wrongful death beneficiary may not "bring claims [the decedent] could not have brought himself" such as claims brought after the expiration of the statute of limitations applicable to underlying claim); *Estate of Krahmer ex rel. Peck v. Laurel Healthcare Providers, LLC*, 315 P.3d 298, 300 (N.M. Ct. App. 2013) (under New Mexico wrongful death act, "the same cause of action exactly as it would have been possessed by the decedent is what is transmitted to the personal representative").

Without cataloging all of the ways in which a Maryland wrongful death claim differs from a claim under the statutes of those states, it shall suffice to say that the reasoning of those cases is in significant tension with the Court of Appeals' rejection of the proposition that "all defenses applicable to the decedent's claim prior to her death would necessarily preclude maintenance of a [Maryland] wrongful death claim after the decedent's death." *Mummert*, 435 Md. at 222. It is unquestionably incorrect to say that in Maryland a wrongful death claimant stands in exactly the same legal position as the decedent. *See id.* at 219-20 (citing *Stewart*, 104 Md. at 341).[14]

---

[14] FutureCare also asks this Court to consider *Ruiz v. Podolsky*, 237 P.3d 584 (Cal. 2010), which involves California's special statutory framework for agreements to arbitrate claims relating to medical injuries. Because that statute specifically "contemplated the inclusion of wrongful death claims within arbitration agreements drafted pursuant to [that statute]," the California court concluded that its legislature "intended to permit patients to bind any heirs pursuing wrongful death actions to these agreements." *Id.* at 592. As another appellate court later explained, *Ruiz*'s holding has "no bearing on third party wrongful death claims outside the context of" the provisions of that medical negligence statute. *Daniels v. Sunrise Senior Living, Inc.*, 212 Cal. App. 4th 674, 676 (Ct. App. 2013). Instead, when an agreement meets certain statutory requirements, California's medical negligence law "effectively supersedes" the ordinary principles "that wrongful death claims are independent actions accruing to the decedents' heirs, and that arbitration agreements are generally not binding on third party

In summary, Maryland law does not possess the material features of the legal regimes that have led courts from other states to require wrongful death claimants to arbitrate based on a decedent's arbitration agreement. Consistent with *Mummert*, 435 Md. at 226, we are persuaded by the reasoning from states that de-emphasize the derivative nature of a wrongful death claim and instead emphasize its independent status. *Accord Spangler v. McQuitty*, ___ Md. at ___, 2016 WL 3685198, at \*13-14 (reasoning that "the purpose of the wrongful death statute and Maryland's long-standing jurisprudence" generally align with jurisdictions that regard a wrongful death action as independent of, rather than derivative of, a decedent's personal injury claim). Therefore, we hold that under Maryland law a decedent ordinarily cannot bind his or her wrongful death beneficiaries to arbitrate their wrongful death claims.

**D.        Treatment of Wrongful Death Claims Under Other Maryland Statutes**

In addition to its primary theory about the wrongful death statute, FutureCare raises some miscellaneous arguments about the treatment of wrongful death claims under other Maryland statutes. None of these various provisions grant decedents the power to control the future litigation rights of wrongful death beneficiaries.

FutureCare cites *Espina v. Jackson*, 442 Md. 311, 347-54 (2015), in which the Court of Appeals held that, in calculating the limits of liability under the Local Government Tort Claims Act (LGTCA), wrongful death damages should be aggregated with damages from survival claims. At the time of *Espina*, the applicable statute

---

nonsignatories." *Daniels*, 212 Cal. App. 4th at 683. FutureCare does not contend that Maryland has enacted a comparable statute.

provided that "the liability of a local government may not exceed $200,000 per an individual claim . . . for damages resulting from tortious acts or omissions[.]" CJP § 5-303(a)(1). The legislative history indicated that the General Assembly had intended to incorporate a definition of "individual claim" that the insurance industry preferred. *Id.* at 349 (citing *Bd. of Cnty. Comm'rs of St. Mary's Cnty. v. Marcas, L.L.C.*, 415 Md. 676, 687 (2010)). By its own terms, *Espina* concerns the meaning of a particular term of a particular statute with its own special purpose and history. *See Espina*, 442 Md. at 348 ("[t]he answer to the question of aggregation of claims *turns on* the interpretation of the phrase 'per an individual claim' as used in the LGTCA" (emphasis added)). The Court did not purport to alter the "longstanding principle that wrongful death and survival actions are 'separate and distinct.'" *Id.* at 353 (quoting *Owens-Corning Fiberglas Corp. v. Garrett*, 343 Md. 500, 537 n.23 (1996)).[15]

In its reply brief and at oral argument,[16] FutureCare pointed out that the Maryland Workers' Compensation Act precludes a wrongful death action against an employer where an employee's death results from an injury arising out of and in the course of his employment. *See Austin v. Thrifty Diversified, Inc.*, 76 Md. App. 150, 163-64 (1988); *see*

---

[15] The Court emphasized the limited scope of its holding by acknowledging that wrongful death claims and survivorship claims are not aggregated for the purposes of CJP § 11-108, the general cap on noneconomic tort damages. *Espina*, 442 Md. at 351-53 (analyzing *Goss v. Estate of Jennings*, 207 Md. App. 151 (2012)).

[16] Generally, this Court has no obligation to address grounds that a party does not include in the initial brief. *See, e.g.*, *Oak Crest Vill., Inc. v. Murphy*, 379 Md. 229, 241-42 (2004); *Chang v. Brethren Mut. Ins. Co.*, 168 Md. App. 534, 550 n.7 (2006).

*also Respess v. Travelers Cas. & Sur. Co. of America*, 770 F. Supp. 2d 751, 766-68 (D. Md. 2011). The Workers' Compensation Act, however, precludes personal injury claims and wrongful death claims alike by dictating an "exclusive" method of recovery against an employer for certain work-related injuries. *See* Md. Code (1991, 2008 Repl. Vol.), § 9-509(a) of the Labor and Employment Article; *Austin*, 76 Md. App. at 152, 155, 164. It does not follow from this unique statutory scheme that a wrongful death beneficiary is subject to all of the same constraints as the decedent.

Also in its reply brief, FutureCare conjured the specter of a "double recovery." FutureCare hypothesizes that plaintiffs might exceed the aggregate limit under CJP § 3-2A-09 for noneconomic damages in medical negligence cases by pursuing survival claims in arbitration while pursuing wrongful death claims in court.[17] This argument is unavailing for several reasons.

First, that hypothetical scenario could not come about in the present case because, as FutureCare concedes, Mrs. Butz's personal representative did not file a survival action. In any event, even if her personal representative had filed a survival action, the Health Care Malpractice Claims Act would not require the wrongful death beneficiaries to pursue their claims in the same action or even the same forum as the survival claim. Finally, in instances in which the wrongful death and survival actions proceed in different

---

[17] This argument does not actually concern a "double recovery," as that term is properly understood. In FutureCare's hypothetical, the noneconomic damages for mental anguish of surviving family members after the decedent's death would not duplicate the noneconomic damages for mental anguish experienced by the decedent before death. *See Spangler v. McQuitty*, ___ Md. at ___, 2016 WL 3685198, at *17-18; *see also Chung*, 76 Md. App. at 538-39 (citing *Stewart*, 104 Md. at 342-43).

forums, the statute provides a mechanism for a court to "reduce the award in each action proportionately so that the total award for noneconomic damages for both actions conforms to the [aggregate] limitation." CJP § 3-2A-09(c)(4). FutureCare is free to argue before a court (or an arbitrator) about the appropriate statutory damage cap if a damage award ever in fact exceeds the relevant limits.

## CONCLUSION

To prevail in her wrongful death action, Ms. Peeler must show that her mother's death resulted from an act that would have entitled her to maintain an action and recover damages if her death had not ensued. *See* CJP § 3-902(e). The statute does not, however, require Ms. Peeler to pursue that wrongful death claim only in the forum in which her mother could have asserted her own claims had she survived. The statute did not vest Ms. Peeler's mother with the power to decide whether the statutory beneficiaries should waive their rights to present their claims to a judge or jury.

The circuit court, therefore, correctly determined that Ms. Peeler did not agree to arbitrate her wrongful death claims with FutureCare and that FutureCare has identified no other principle of Maryland law that would require Ms. Peeler to fulfill her mother's promises.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**